**John FORASTÉ, Plaintiff,**

v.

**BROWN UNIVERSITY and Laura Freid, Defendants.**

**C.A. No. 01–434S.**

United States District Court,
D. Rhode Island.

March 7, 2003.

---

Alden C. Harrington, Boyajian, Harrington & Richardson, Providence, RI, for plaintiff.

Steven M. Richard, Jerry Cohen, Tillinghast Licht Perkins Smith & Cohen LLP, Yolanda M. Johnson, Esq., Beverly E. Ledbetter, Esq., Providence, RI, for defendant.

## DECISION AND ORDER

SMITH, District Judge.

Presently before the Court is Defendant Brown University's ("Brown") Motion for Summary Judgment with respect to all counts contained in the original Complaint

as well as Brown's Motion to Dismiss the Plaintiff's Amended Complaint. For purposes of judicial economy, as explained in more detail within, this Court will treat all of Brown's motions at once. For the reasons discussed below, Brown's motions are granted in part and denied in part.

## I. *Factual Background*

For over twenty years, and while in the employ of Brown, Plaintiff John Forasté ("Plaintiff" or "Forasté") produced thousands of photographs whose subjects spanned a panoramic range—from portrayals of academic life at Brown to renderings of the campus' natural beauty. This action concerns the ownership of those images. The following facts are undisputed by the parties. Forasté was employed by Brown as a full-time professional photographer from February 1975 until September 1998. Defendant Laura Freid oversaw Forasté's department as of 1996. Forasté was paid an annual salary and received employment and retirement benefits, but was never paid a commission for his work at Brown. Forasté never signed an employment contract with Brown, nor was he a member of Brown's faculty. Plaintiff claims, and Defendants do not dispute, however, that he was a member of Brown's staff.

Throughout the years of his employment, Brown provided Forasté with a photographer's assistant, student assistants and a darkroom on campus. Forasté used his own photographic equipment in the first two years of his employment, but in 1977 or 1978 Brown purchased photographic equipment for him, which he used almost exclusively in his work thereafter. Forasté received his assignments on an *ad hoc* basis from Brown personnel (such as editors or art designers) but would also take pictures that captured the feel of campus life or the beauty of the campus on his own initiative.

In February 1983, Forasté helped to draft a "Position Content Document" ("PCD"), that summarized his job responsibilities. Defendants' Rule 12.1 Statement, ¶ 12. The job functions, as described in this document, included producing, consulting on, coordinating and scheduling all photography for Forasté's department and others; and creating an image for the Brown community and the general public—"glimpses of the kind of place Brown is"—to be used in Brown publications and by various Brown departments. *See* Plaintiff's Memorandum in Support of Objection to Defendants' Motion for Summary Judgment ("Plaintiff's Memorandum"), p. 2 (citing PCD).

The parties are in agreement that in 1986, Brown adopted[1] certain "Policies and Procedures Relating to Copyright" (the "Policy") that was eventually published in Brown's "Faculty Rules and Regulations" handbooks.[2] Plaintiff's Memorandum, pp. 3–4. The Policy was also referenced in another Brown handbook entitled "Staff Information Guide, You & Brown."[3] The Policy applies if

---

1. The question of how and exactly for what purpose this policy was adopted is not clear. For reasons that are set forth in detail below, the resolution of this issue may well be outcome determinative of this case.

2. There are three versions of this handbook, dated 1988, 1994 and 1998. The parties are in agreement that the pertinent provisions of this policy, however, did not change from its inception.

3. There are two versions of this handbook, dated 1995 and 1998, with no material differences. It is undisputed by the parties that any discrepancies between the Policy (as expressed in the "Faculty Rules and Regulations" handbooks) and the "Staff Information Guide" handbooks, are to be resolved in favor of the Policy.

an employee creates "copyrightable materials under University auspices or using University facilities." Of particular import are the following provisions:

3. *Ownership:* It is the University's position that, as a general premise, ownership of copyrightable property which results from performance of one's University duties and activities will belong to the author or originator. This applies to books, art works, software, etc. However, under the following conditions ownership will be with the University:

. . . .

b. The property was the result of an assigned University task or responsibility which was fully supported by the University, and for which a prior understanding exists between the authors and the University with respect to ownership.

c. There is a prior written agreement between the author(s) and the University with respect to property rights. Such agreement will take precedence over other sections of this policy.

4. *Other University Rights:* When copyrighted material is developed in conjunction with a person's University activities, using University facilities and/or equipment, the University retains the right to use such materials for its own educational and research purposes even though it does not claim ownership of the materials under Section 3.

5. *Disclosure:* It is the responsibility of the originator(s) to make prompt disclosure of any copyrightable materials that may, under provisions of this policy, be owned by the University. The disclosure should be made to the head of the organizational unit to which the originator belongs, e.g., the department chair . . . .

Forasté readily acknowledges that he was oblivious of Brown's copyright policy until September 1998, after his employment with the University came to an end as a result of a staff cutback. There is no written instrument signed by Forasté or Brown representing an agreement of ownership in any of the images that Forasté created. Forasté alleges that his onetime supervisor, Robert Reichley, orally represented to him in the late 1970s or early 1980s that he would always "have access" to his work for Brown. Forasté concedes, however, that this conversation did not regard the ownership of his work.

## II. *Procedural Posture*

The initial Complaint set forth facts tending to support Plaintiff's original theory of the case: namely, that Forasté was, and had always been, the owner of the images by virtue of the Policy. The causes of action pled in the initial Complaint flowed from this theory: Count I for copyright infringement; Count II for common law conversion; and Count III for "unfair and deceptive trade practice and unfair competition." Defendants moved for summary judgment on all Counts, asserting defenses predicated on the facts and claims as pled.

At oral argument on Brown's Motion for Summary Judgment on January 6, 2003, it became clear that Forasté's theory of the case had changed. Plaintiff now asserts, as an alternate theory, that Brown first owned the images, but then transferred or assigned ownership to him *via* the Policy and pursuant to 17 U.S.C. §§ 201(d) and 204(a).[4] Given the significant change in

---

**4.** The first appearance of Plaintiff's new theory of the case is in his memorandum opposing the motion for summary judgment.

Plaintiff's position, and in the interests of equity, this Court granted the Plaintiff leave to file a motion to amend the Complaint to reflect his new contentions.

On January 13, 2003, Plaintiff filed a Motion for Leave to Amend the Complaint, attaching his proposed Amended Complaint thereto. Brown filed a timely objection to this motion. This Court granted the motion on January 16, 2003.[5] The Amended Complaint states three causes of action: Count I for Copyright Infringement based on 17 U.S.C. § 201(b); Count II for Copyright Infringement based on "transfer of copyright interest" (presumably under 17 U.S.C. §§ 201(d) and 204(a)); and Count III for "unfair and deceptive trade practices and unfair competition." Plaintiff also alleges in the Amended Complaint that he has initiated the copyright registration process for ninety-seven (97) of the images in his possession.[6] Defendants subsequently filed a Motion to Dismiss the Amended Complaint for Lack of Subject Matter Jurisdiction, arguing that Plaintiff must obtain and present a certificate of registration from the Copyright Office before he can proceed with this suit. Plaintiff submitted a timely objection to this motion.

Pursuant to Fed.R.Civ.P. 56, the Court will treat Defendants' Motion for Summary Judgment as one for partial summary judgment, as it applies to the corresponding counts of the Amended Complaint.[7] The Court will also address the Defendants' Motion to Dismiss the Amended Complaint for lack of jurisdiction.

III. *Analysis*

A. *Standing*

Defendants have moved to dismiss the Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(1), which provides for dismissal of an action if the court lacks jurisdiction over the subject matter of the action.

It is beyond cavil that "[f]ederal courts are courts of limited jurisdiction, and thus must take pains to act only within the margins of that jurisdiction." *Cumberland Farms, Inc. v. Me. Tax Assessor*, 116 F.3d 943, 945 (1st Cir.1997). "Hence, the preferred—and often the obligatory—practice is that a court, when confronted with a colorable challenge to its subject-matter jurisdiction, should resolve that question before weighing the merits of a pending action." *Morales Feliciano v. Rullan*, 303 F.3d 1, 6 (1st Cir.2002); *Donahue v. City of Boston*, 304 F.3d 110, 117 (1st Cir.2002) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)).

Defendants contend that Forasté lacks standing to bring a copyright infringement action because he has not registered a copyright in the images as to which he claims a copyright interest. At the time this action was filed, Plaintiff had not reg-

---

5. Fed.R.Civ.P. 15(a) provides, in relevant part:

   (a) **Amendments.** A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

6. As discussed below, this modification to the Complaint is intended to cure Forasté's lack of standing to assert a copyright infringement action.

7. For reasons that are not clear, Plaintiff declined to reassert his claim for conversion in his Amended Complaint. This issue was clearly dependent on the outcome of the copyright question. Because it has not been repled, it has been dropped from the case and this Court will not address it.

istered a copyright in any of the images at issue. However, Plaintiff has alleged in the Amended Complaint that he has initiated the process of copyright registration in ninety-seven of the disputed images in his possession.[8] Defendants argue that Plaintiff's copyright infringement claim cannot stand because Plaintiff has not met the registration requirement.

■ 17 U.S.C. § 411(a) provides that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title."[9] Copyright registration is a condition precedent and a jurisdictional prerequisite to the filing of an infringement action. *See Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1293 n. 7 (D.R.I.1982); *Franklin v. Ciroli,* 865 F.Supp. 940, 942 (D.Mass.1994); *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.,* 650 F.Supp. 838, 850 (D.Mass.1986); *see also Ashlar Inc. v. Structural Dynamics Research Corp.,* 36 U.S.P.Q.2d 1402, 1405 (N.D.Cal.1995).

Plaintiff points to 17 U.S.C. § 408(a) which states: "[R]egistration is not a condition of copyright protection," and relies on *Olan Mills, Inc. v. Linn Photo Co.,* 23 F.3d 1345 (8th Cir.1994) for the proposition that injunctive, rather than legal, relief is available notwithstanding the absence of a valid registration. In *Olan Mills,* the plaintiff, a photo studio, discovered that the defendant was engaged in unauthorized copying of photographs to which Olan Mills held a copyright. *Id.* at 1347. Olan Mills then took a number of additional photographs, registering copy-

right in some of these, in order to determine if defendant would continue its allegedly illegal copying activities with the new photographs as well. When defendant persisted, plaintiff filed suit in federal court seeking legal and equitable relief. The defendant argued that Olan Mills had not presented a "live controversy" because some of the photographs for which it sought protection had not yet been registered. The Eighth Circuit disagreed, stating:

> The power to grant injunctive relief is not limited to registered copyrights, or even to those copyrights which give rise to an infringement action.... While registration is required under section 411 of the Copyright Act in order to bring suit for infringement, infringement itself is not conditioned upon registration of the copyright.

*Id.* at 1349 (citations omitted).

Defendants counter, in their Motion to Dismiss the Amended Complaint, that two recent federal district court decisions have required a putative plaintiff in a copyright infringement action to obtain and present a certificate of registration from the Copyright Office before permitting an action to proceed. *See* Defendants' Memorandum in Support of their Motion to Dismiss Amended Complaint, p. 3 (citing *Strategy Source, Inc. v. Lee,* 233 F.Supp.2d 1 (D.D.C.2002); *Brush Creek Media, Inc. v. Boujaklian,* No. C–02–3491EDL., 2002 WL 1906620 (N.D.Cal. Aug.19, 2002)).

Defendants readily acknowledge, however, that there is a considerable division of authority regarding a plaintiff's obligation

---

**8.** At oral argument, Plaintiff's counsel asserted that Brown possesses the majority of the images and has denied Plaintiff access to them. Plaintiff is unable, counsel continued, to register copyright in images he cannot access. Brown contested this assertion and claimed (correctly, it appears) that several

images were either in Plaintiff's possession or readily accessible to him. Brown claims Forasté has no excuse for his failure to register these images.

**9.** Subject to limited exceptions not applicable here.

to obtain and present a certificate of registration prior to filing suit. *See* Defendants' Memorandum in Support of their Motion to Dismiss Amended Complaint, p. 3; *Strategy Source,* 233 F.Supp.2d at 2; *Brush Creek Media,* 2002 WL 1906620, at *2. Adding to the uncertainty is the fact that the First Circuit has not yet addressed this issue.

■ 17 U.S.C. § 410(d) states:

*The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office.*

*See* 17 U.S.C. § 410(d) (emphasis supplied). The plain language of this statutory provision suggests that the registration occurs *on the day* the Copyright Office receives all of the necessary application materials (application, deposit, and fee).[10]

It is also clear that a failure to register is certainly not fatal to the Plaintiff's alleged substantive interest in the copyright of the images. *See, e.g., M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1488 (11th Cir.1990) (filing of action prior to registration does not vitiate claim for equitable relief); *SportsMEDIA Tech. Corp. v. Upchurch,* 839 F.Supp. 8, 9 (D.Del.1993) (district court has subject matter jurisdiction over copyright action when copyright applicant submits application one day prior to filing suit for infringement); *Infodek, Inc. v. Meredith–Webb Printing Co., Inc.,* 830 F.Supp. 614, 620 n. 6 (N.D.Ga.1993) (copyright interest not dependent on registration).

**10.** This Court does not concur with the statutory reading propounded in *Ryan v. Carl Corp.,* No. C 97–3873FMS, 1998 WL 320817, *2 (N.D.Cal. June 15, 1998), and adopted ("reluctantly," and with the admission that the "result is inefficient") by the *Brush Creek Media* court. *See Brush Creek Media,* 2002 WL 1906620, at *4. These two courts interpret § 401(d) to mean that registration is consummated only after an application is examined, considered, and accepted by the Copyright Office, and is then "backdated" to the time the application is received. *See id.* As an initial matter, this gloss ignores the statute's mandate that the merits of the application materials are "later determined," that is, determined at some time after the right to sue comes into being. Moreover, this interpretation runs contrary to the wealth of authority concluding that a pending registration application is sufficient to confer federal jurisdiction over a copyright infringement claim. *See, e.g., Geoscan, Inc. of Texas v. Geotrace Techs., Inc.,* 226 F.3d 387, 393 (5th Cir.2000); *Apple Barrel Prods., Inc. v. R.D. Beard,* 730 F.2d 384, 386 (5th Cir.1984); *Well–Made Toy Mfg. Corp. v. Goffa Int'l Corp.,* 210 F.Supp.2d 147, 157 (E.D.N.Y.2002); *Salerno v. City Univ. of New York,* 191 F.Supp.2d 352, 356 (S.D.N.Y.2001); *Gable–Leigh, Inc. v. N. Am. Miss,* No. CV 01–01019MMM, 2001 WL 521695, at at *4 (C.D.Cal. April 13, 2001); *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.,* 81 F.Supp.2d 70, 72 (D.D.C.2000); *Havens v. Time Warner, Inc.,* 896 F.Supp. 141, 142–43 (S.D.N.Y.1995).

Even leaving aside the metaphysical debate over the time of a registration's "conception," the *Ryan* and *Brush Creek Media* reading of the statute is not congruous with the statutory provision permitting a plaintiff to sue for copyright infringement if his application for registration has been rejected by the Copyright Office:

> In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a). This provision confirms that it is the submission of an application, deposit, and fee (rather than the issuance *vel non* of a registration certificate) that triggers registration for purposes of conferring standing to sue. *But see Brush Creek Media,* 2002 WL 1906620, at *4 (reading § 411(a) to condition the ability to sue on the issuance or denial of a registration certificate).

Several courts have permitted a copyright action to proceed once a plaintiff has rectified his pleadings to reflect copyright registration or attempted registration. *See, e.g., Sully's Bar, Inc.,* 650 F.Supp. at 851 (defects in failure to comply with § 411(a) registration requirement could be cured in amended complaint) (citing *Meta–Film Assoc., Inc. v. MCA, Inc.,* 586 F.Supp. 1346, 1351–52 (C.D.Cal.1984) (plaintiffs filing with the Copyright Office subsequent to filing complaint cured the initial § 205(a) defect); *N. Songs, Ltd. v. Distinguished Prods., Inc.,* 581 F.Supp. 638, 641 (S.D.N.Y.1984) ("courts have consistently permitted a plaintiff to correct a defective recordation, and to go forward with the suit as of the date of the filing of the action")); *Chuck Blore & Don Richman, Inc. v. 20/20 Adver., Inc.,* 674 F.Supp. 671, 673 (D.Minn.1987) (amended complaint filed after registration of works at issue cured fact that initial action was filed prior to their registration); *Conan Properties, Inc. v. Mattel, Inc.,* 601 F.Supp. 1179, 1182 (S.D.N.Y.1984) (amended copyright infringement complaint that fails to allege registration of copyrights can be cured by filing second amended complaint reciting registration requirement); *Frankel v. Stein and Day, Inc.,* 470 F.Supp. 209, 212 n. 2 (S.D.N.Y.1979) (authors permitted to amend their complaint to allege copyright registration, notwithstanding fact that registration was made after the filing of original complaint).

■ Moreover, it would be wholly inequitable to require that Forasté, prior to proceeding with this action, register a copyright in images to which Brown presently denies him access. This Court agrees with the approach of the Eighth Circuit in *Olan Mills,* and finds that the allegations of copyright registration in the Amended Complaint are sufficient to give Forasté standing and to confer subject matter jurisdiction on this Court. While this Court has jurisdiction, however, as in *Olan Mills,* Plaintiff may only seek equitable relief (not damages) until such time as the images are fully registered. Therefore, Defendants' Motion to Dismiss the Amended Complaint must be denied. Having concluded that Forasté has standing to pursue his claims, this Court will address Defendants' Motion for Summary Judgment.

**B.** *Defendants' Motion for Summary Judgment*

1. *Standard of Review*

Fed.R.Civ.P. 56(c) states that a party shall be entitled to· summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When determining a motion for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 820 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990); *see Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Lawrence v. Northrop Corp.,* 980 F.2d 66, 68 (1st Cir.1992).

Summary judgment is a procedure that involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Once the moving party meets this burden, the onus

falls upon the nonmoving party, who must oppose the motion by presenting facts that show that there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)); *see Goldman*, 985 F.2d at 1116; *Lawrence*, 980 F.2d at 68; *Garside*, 895 F.2d at 48 ("a 'genuine' issue exists if there is 'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.' ") (citing *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)).

To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation or denials of his pleading[.]" *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Moreover, the evidence presented by the nonmoving party " 'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' " *Mesnick*, 950 F.2d at 822 (citing *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989)). Indeed, "[e]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). In order to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." *Goldman*, 985 F.2d at 1116 (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505).

*2. The Work Made for Hire Doctrine*

There are virtually no material factual disputes regarding how Forasté performed his work while employed at Brown. He was clearly a Brown employee, not an independent contractor. Brown contends that Forasté has no copyright interest in the photographs he took while employed with the University because such works are covered by the "work made for hire" doctrine. This doctrine is codified at 17 U.S.C. § 201(b):

> **Works Made for Hire.**—In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.[11]

The Seventh Circuit has stated succinctly the test to determine whether a work is made for hire:

> [A]n employer owns a copyright in a work if (1) the work satisfies the generally applicable requirements for copyrightability set forth in 17 U.S.C. § 102(a), (2) the work was prepared by an employee, (3) the work was prepared within the scope of the employee's employment, and (4) the parties have not expressly agreed otherwise in a signed, written instrument.

*Baltimore Orioles, Inc. v. Major League Baseball Players Assn.*, 805 F.2d 663, 667 (7th Cir.1986).

As an initial matter, Defendants divide the period in which Plaintiff produced photographs into two groups (1) the time prior to January 1, 1978 (the effective

---

**11.** The relevant portion of 17 U.S.C. § 101 defines a "work made for hire" as "(1) a work prepared by an employee within the scope of his or her employment." There is no ques-

tion that a photograph is copyrightable, as it falls under 17 U.S.C. § 102(a)(5), "pictorial, graphic, and sculptural works."

date of the Copyright Act of 1976), to which the 1909 Copyright Act applies, and (2) the time after January 1, 1978, to which the 1976 Copyright Act applies. *See Playboy Enters., Inc. v. Dumas,* 53 F.3d 549, 553 (2nd Cir.1995) (artwork produced from 1974 through 1977 is governed by the 1909 Act); *Roth v. Pritikin,* 710 F.2d 934, 938 (2nd Cir.1983) ("[w]hoever holds an interest in a copyright on or after January 1, 1978, has a right to the protections afforded by the new statute.... [The new statute] does not, however, purport to determine who holds a copyright for works created before January 1978").

### a. Photographs Pre–1978

■ The 1909 Act contains its own work made for hire provision: in order to find that the pre–1978 images were "works made for hire" within the meaning of the 1909 Act, the court must find (1) that the work in question was made by the employee in the scope of his employment, and (2) that there is no other agreement to the contrary, express or implied. *See Playboy Enters.,* 53 F.3d at 554–55.

Forasté has not pointed to any evidence that, during the period of 1976 through 1977, his photographs were produced outside the scope of his employ for purposes of the work made for hire doctrine. Furthermore, Plaintiff has not pointed to any contrary express or implied agreement in 1976 or 1977 which would negate the application of the 1909 Act's work made for hire doctrine.

### b. Photographs Post–1978

The 1976 Act's work made for hire provision is more restrictive than that of its predecessor, in that it requires an express, written agreement signed by both parties to overcome the work made for hire presumption of employer ownership. *See* 17 U.S.C. § 201(b).[12]

The crux of Plaintiff's argument is that the Policy adopted by Brown, as expressed in the various Faculty Rules and Regulations Handbooks, constitutes an express, written agreement[13] that alters the presumption of employer ownership in the work made for hire provision of the 1976 Act. Plaintiff points especially (a) to section (3) of the Policy, which sets forth a position opposite to the work made for hire doctrine, and (b) to subsection (3)(b) of the Policy, which calls for a "prior understanding" between employer and employee before the presumption in favor of employee ownership can be rebutted.

12. The Supreme Court has offered the following assistance in defining a work made for hire under the 1976 Act:

To determine whether a work is [made] for hire under the [1976] Act, a court first should ascertain, using principles of [the] general common law of agency, whether the work was prepared by an employee or an independent contractor.... In determining whether a hired party is an employee under the general common law of agency ... [a court should look to] the hiring party's right to control the manner and means by which the product is accomplished; .... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 750–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

13. Plaintiff does not contend that he signed any version of the Policy, as required under 17 U.S.C. § 201(b). He argues instead that it "would be illogical to have all Brown employees sign the policy." *See* Plaintiff's Memorandum, p. 9 n. 8.

■ It is a bedrock principle that "when the [statutory] text's meaning is plain, courts are obligated to enforce the provision as written." *Desilets v. Wal–Mart Stores, Inc.*, 171 F.3d 711, 714 (1st Cir. 1999) (citing *United States v. Rivera*, 131 F.3d 222, 224 (1st Cir.1997)). The language of the work made for hire doctrine could not be clearer: it requires the parties to make an express agreement, memorialized "in a written instrument *signed by them.*" 17 U.S.C. § 201(b) (emphasis supplied).

■ The First Circuit, not surprisingly, has interpreted this statutory language to mean precisely what it says. *See, e.g., The Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc., Inc.*, 119 F.3d 55, 63 (1st Cir.1997) (court emphasized and enforced the requirement of a written, as opposed to oral, agreement in order to circumvent the work made for hire doctrine). Other courts have held the same. *See, e.g., Manning v. Bd. of Trs. of Cmty. Coll. Dist. No. 505 (Parkland College)*, 109 F.Supp.2d 976, 980 (C.D.Ill.2000).

In 17 U.S.C. § 201(b), Congress unambiguously set forth the requirement that in order to overcome the work for hire presumption there must be a clearly expressed written agreement, signed by the parties, stating as much. This Court finds that the work made for hire doctrine applies to the images in the absence of an express agreement to the contrary that is signed by both Forasté and Brown. The Policy is patently inadequate to overcome the presumption of Brown's ownership un-

der the work made for hire doctrine. Therefore Defendants' Motion for Summary Judgment for copyright infringement (regarding both the pre–1978 and post–1978 photographs) contained in Count I of the Amended Complaint must be granted.

3. *Claim for "Unfair and Deceptive Trade Practices and Unfair Competition"*

■ Plaintiff fails to specify the basis in law for his claim of "unfair and deceptive trade practices and unfair competition." In fact, Rhode Island recognizes two separate causes of action: a statutory cause of action for deceptive trade practices under R.I. Gen. Laws § 6–13.1–5.2(a) (the "Deceptive Trade Practices Act"), and a common law cause of action for unfair competition. *See ERI Max Entertainment, Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I.1997). Under the Deceptive Trade Practices Act, "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes" may bring an action. *Id.* (citing § 6–13.1–5.2(a)). Plaintiff plainly has no viable claim under this statute. On the other hand, "a finding of unfair competition must be predicated upon conduct on the part of the respondent that reasonably tended to confuse and mislead the general public into purchasing his product when the actual intent of the purchaser was to buy the product of the complainant." *Id.* at 1353–54 (citing *George v. George F. Berkander, Inc.*, 92 R.I. 426, 429, 169 A.2d 370, 371 (1961)). Obviously Plaintiff has made no such allegations here.[14] For these reasons, sum-

---

**14.** Defendants have proceeded under the curious assumption that Plaintiff's "unfair and deceptive trade practices and unfair competition" claim is rooted in Mass. Gen. Laws ch. 93A. However, that statute requires that the facts underlying the case must have occurred "primarily and substantially" in Massachusetts. *See* Mass. Gen. Laws ch. 93A, § 11. Clearly, they have not. Furthermore, there is

no doubt that the 1976 Copyright Act preempts a claim for unfair and deceptive trade practices under Chapter 93A. *See John G. Danielson, Inc. v. Winchester–Conant Properties, Inc.*, 322 F.3d 26 (1st Cir.2003) (statement that violations rose to the level of "rascality" is insufficient for 93A claim to survive preemption); *Henry v. Nat'l Geographic Soc.*, 147 F.Supp.2d 16, 21–22 (D.Mass.2001)

mary judgment should enter as to this count.

IV. *Conclusion*

Based upon the foregoing analysis, the Court orders as follows:

1.  Defendants' Motion to Dismiss the Amended Complaint Due to Lack of Subject Matter Jurisdiction is DENIED;

2.  Defendants' Motion for Summary judgment as to Count I of the Amended Complaint is GRANTED;

3.  Defendants' Motion for Summary judgment as to Count III of the Amended Complaint is GRANTED; and

4.  The Court will set an expedited discovery and trial schedule after conferring with the parties with respect to Count II, transfer or assignment of copyright ownership under 17 U.S.C. §§ 201(d) and 204(a).

IT IS SO ORDERED.

(where all that is claimed is that 93A cause of action is based in an unauthorized use of the copyrighted claim, Chapter 93A claim is preempted).