**F I L E D**

PUBLISH

**July 26, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LA RESOLANA ARCHITECTS, PA,
a New Mexico Professional
Association,

      Plaintiff-Appellant,

    v.

CLAY REALTORS ANGEL FIRE, a
New Mexico corporation, LANCE K.
CLAY, an individual, GARY
PLANTE, an individual, and ANGEL
FIRE HOME DESIGN, a New Mexico
corporation,

      Defendants-Appellees.

No. 04-2127

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CIV-03-1337-ACT/RHS)**

---

Kevin Lynn Wildenstein, Southwest Intellectual Property Services, LLC,
Albuquerque, New Mexico, for Plaintiff-Appellant.

Randy S. Bartell, Montgomery & Andrews PA, Santa Fe, New Mexico, for
Defendant-Appellee Angel Fire Design (Daniel J. Behles, Albuquerque, New
Mexico, for Defendants-Appellees Lance K. Clay, Gary Plante, and Clay Realtors
Angel Fire, with him on the brief).

Before **LUCERO** and **TYMKOVICH** , Circuit Judges, and **BLACKBURN,** [*] District Judge.

_____

**TYMKOVICH** , Circuit Judge.

_____

The Copyright Act of 1976 requires authors to register their works with the federal Copyright Office in order to be entitled to the Act's protections against copyright infringement. Two conflicting interpretations of the Act's registration requirement have been upheld by circuit courts: 1) registration occurs when the copyright owner submits an application for registration to the copyright office, or, conversely 2) registration occurs when the copyright office actually approves or rejects the application. We hold that the second interpretation is correct. The Copyright Office must approve or reject the application before registration occurs or a copyright infringement action can be brought.

Plaintiff-Appellant, La Resolana Architects, PA (La Resolana), appeals the dismissal of its copyright infringement suit against Defendants-Appellees, Clay Realtors Angel Fire, Lance K. Clay, Gary Plante, and Angel Fire Home Design (Clay Realtors). We take jurisdiction pursuant to 28 U.S.C. § 1291, and, finding

_____

[*]Robert E. Blackburn, District Judge, United States District Court for the District of Colorado, sitting by designation.

-2-

La Resolana's application for copyright registration had not yet been approved when the litigation commenced, we affirm.

## I.  BACKGROUND

In late 1996 and early 1997, a representative of La Resolana, a Santa Fe architecture firm, met with representatives from Clay Realtors about developing townhouses in Angel Fire, New Mexico.  The La Resolana representative allegedly showed Clay Realtors some architectural drawings and plans La Resolana had created specifically for the Angel Fire project.  Ultimately, however, the parties never reached an agreement regarding the drawings, never contracted to do business together, and went their separate ways.

In October 2003, a La Resolana representative familiar with the drawings was in Angel Fire, New Mexico, visiting another building site.  While there, he saw townhouses being sold by Clay Realtors that looked strikingly similar to those depicted in the architectural drawings developed by La Resolana in 1997.

Shortly thereafter, on November 6, 2003, La Resolana applied to register the copyrighted drawings with the Copyright Office.  La Resolana sent the requisite applications, fees, and deposits to the Copyright Office.  Upon receiving confirmation that the Copyright Office had received their materials, but before receiving confirmation that the Copyright Office registered the copyrights, La

Resolana sued Clay Realtors for copyright infringement. The suit was docketed on November 20, 2003.

On March 8, 2004, Clay Realtors moved to dismiss the complaint arguing that La Resolana could not sue for copyright infringement until it obtained a certificate of copyright registration from the Copyright Office. La Resolana responded by attaching a March 10, 2004 letter from the Copyright Office indicating that all necessary materials had been received, the copyrights had been approved for registration on January 22, 2004, and the effective registration date was November 19, 2003. However, the Copyright Office had not yet issued La Resolana a certificate of copyright registration.

Finding the March 10 letter was not admissible evidence, the district court concluded that the drawings were not registered. Since the court therefore lacked jurisdiction over the copyright infringement action, it dismissed the case without prejudice.

## II. ANALYSIS

Federal courts have exclusive jurisdiction over disputes arising under the Copyright Act of 1976. *See* 28 U.S.C. § 1338(a). As with any federal statute, Congress controls if and when courts attain subject matter jurisdiction in a dispute. It is axiomatic that subject matter jurisdiction, which gives courts the power to adjudicate cases, cannot be waived. *Radil v. Sanborn W. Camps, Inc.*,

-4-

384 F.3d 1220, 1224 (10th Cir. 2004). "Where a party attacks the factual basis for subject matter jurisdiction, the court does not presume the truthfulness of factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *Id.* We review de novo the district court's subject matter jurisdiction as well as its grant of a motion to dismiss. *See Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004).

## A. Copyright Law

Our review in this case starts with the statutory scheme created by the Copyright Act of 1976, and its legislative history found at 1976 U.S.C.C.A.N. (90 Stat.) 2541 (codified at 17 U.S.C. §§ 101, et seq.) (the Act or Title 17).

### 1. Historical Background

The Constitution authorizes Congress to regulate copyright protection. *U.S. Const. art I, § 8.* Prior to the passage of the Act, copyright law consisted of a confusing mix of federal and state laws that differed greatly depending on the state and whether a work was published or unpublished. *See* H. Rep. No. 94-1476, at 129, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5744. A primary purpose of the Act was to improve this state of affairs. Thus, "[i]nstead of a dual system of 'common law copyright' for unpublished works and statutory copyright for published works, [Congress] adopt[ed][in 1976] a single system of Federal statutory copyright from creation." *Id.* As a result of the Copyright Act of 1976,

"all legal . . . rights within the general scope of copyright [law] . . . [became] governed exclusively" by Title 17 of the United States Code.  17 U.S.C. § 301(a). By creating a new, single federal system, Congress preempted all state copyright law.  *See* H. Rep. No. 94-1476, at 130,  *reprinted in*  1976 U.S.C.C.A.N. 5659, 5746 ("The intention of section 301 is to preempt and abolish any rights under common law or statutes of a State that are equivalent to copyright").

In its effort to simplify copyright law, Congress made it easier to obtain copyright protection by   recognizing that a copyright exists the moment an original idea leaves the mind and finds expression in a tangible medium, be it words on a page, images on a screen, or paint on a canvass.  *See* 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship fixed in a tangible medium").

Congress's streamlining of copyright law did not end at the creation of copyrights, though.  In addition to eliminating statutory formalities in obtaining a copyright, Congress also created a single, centralized, federal registration system.

## 2.  Registration

Under the Act, registering a copyright is a relatively simple and inexpensive process. [1]  Registering a copyright requires the submission of three items to the copyright office:  1) a deposit (i.e., photocopy) of the work to be

---

[1] Copyright registration fees range from $1 to $100.  *See* 37 C.F.R. § 201.4.

copyrighted, 17 U.S.C. § 408(b); 2) an application to register a copyright, 17 U.S.C. § 409(1) – (11); and 3) a fee, 17 U.S.C. § 708. Once a copyright owner files the requisite deposit, application, and fee, the Register of Copyrights examines the work to determine copyrightability:

> (a) When, *after examination*, the Register of Copyrights determines that . . . the material deposited constitutes copyrightable subject matter . . . , the Register *shall register* the claim and issue to the applicant a certificate of registration.
>
> (b) In any case in which the Register of Copyrights determines that . . . the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register *shall refuse* registration . . . .

17 U.S.C. § 410(a), (b) (emphasis added).

Congress made sure, however, that the registration system did not extinguish the automatic creation and recognition of copyrights. In fact, 17 U.S.C § 408(a) explicitly states that "registration is not a condition of copyright infringement." In addition, the registration system is completely voluntary. *See id.* ("[T]he owner of copyright . . . *may* obtain registration of the copyright") (emphasis added).

### 3. Remedies

Although Congress established a voluntary registration system, it created incentives for copyright owners to register their copyrights. To this end, certain benefits flow only to those who register their copyright. The most significant

benefit to registering copyrights under the Act is the issue raised in this appeal—the right to enforce a copyright in federal court in an infringement suit. 17 U.S.C. § 411(a). [2]

Infringement suits are the mechanism through which other important incentives and remedies created by Title 17 operate. For example, when actual damages are difficult to ascertain or a work has seemingly little extrinsic value, statutory damages are available under 17 U.S.C. § 504. Equally important in the litigation context, under § 410 a certificate of registration is prima facie evidence of the validity of the copyright. For copyright owners hesitant to engage in the long and expensive process of litigation, attorney's fees for prevailing parties are also recoverable under 17 U.S.C. § 505. Finally, and perhaps most important, a registrant can obtain an injunction against an infringer under 17 U.S.C. § 502. To

---

[2] Although the Act preempts state copyright law, it does not eliminate all state law actions. For example, conduct that may give rise to a federal suit for copyright infringement may also give rise to a state law claim in tort for unfair competition, tortious interference, or breach of contract. However, 17 U.S.C. § 301(a) preempts such claims if "1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. 102 and 103; and 2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. 106." *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 847 (10th Cir. 1993). On the other hand, if "a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim." *Id.*

obtain these remedies, though, a federal court must have jurisdiction to hear a suit for infringement.

## B. Federal Court Jurisdiction Under Title 17

### 1. The Plain Language of the Statutes

Turning to the question of federal jurisdiction under the Copyright Act, we start with the language of the statute. If the statutory language is not ambiguous, and the "statutory scheme is coherent and consistent," our inquiry ends. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). Section 411(a) is the jurisdictional linchpin to copyright infringement actions:

> no *action for infringement* of the copyright in any United States work shall be *instituted* until preregistration or *registration* of the copyright claim has been *made in accordance* with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the register of Copyrights.

(emphasis added). On its face, § 411 allows an "action for infringement" to be "instituted" only when "registration" has been "made in accordance" with the Act. Congress amended § 411 on April 27, 2005 by adding the term "preregistration or" before "registration."[3] Congress tasked the Copyright Office with defining which class of copyrights would be eligible for "preregistration." Since

---

[3] *See* II(B)(3)(b) *infra* discussing the Family Entertainment and Copyright Act of 2005, P.L. 109-9 (FECA)

preregistration was not possible when this suit commenced, the new language

does not control the outcome of this appeal. We discuss this amendment in more

detail below.

The most important step necessary before instituting an infringement action

is registering one's copyright. Registration is satisfied by completing the

following steps:

> a. application and payment of fee, § 408;
>
> b. deposit of a copy of the copyrightable material, § 408;
>
> c. examination by the Register of Copyrights, § 410;
>
> d. registration (or refusal to register) by the Register, § 410;
>
> e. issuance of certificate of registration, § 410.

The plain language of the statute thus requires a series of affirmative steps

by both the applicant and the Copyright Office. No language in the Act suggests

that registration is accomplished by mere receipt of copyrightable material by the

Copyright Office. Instead, the Register of Copyrights must affirmatively

determine copyright protection is warranted, § 411, before registration occurs

under the Act. [4] And only upon registration or refusal to register is a copyright

---

[4] The Act, unfortunately, gives little guidance on how to construe the term "registration." *See* § 101 (definitions) ("registration . . . means a registration of a claim in the original or the renewed and extended term of copyright").

holder entitled to sue for copyright infringement under § 411. [5] Until those steps are followed and registration is "made," federal courts lack subject matter jurisdiction over the infringement claim.

Our interpretation of the Act is bolstered by other provisions pertaining to the registration process. Section 410(a), for example, provides:

> When, *after examination*, the Register of Copyrights determines that . . . the material deposited constitutes copyrightable subject matter . . ., the Register *shall register* the claim and *issue* to the applicant a certificate of registration.

(emphasis added). This language requires the following affirmative acts by the Register—to "examin[e]," to "register," and then to "issue" the certificate of registration. Nothing in this process suggests that the filing of an application alone would be sufficient to register the work.

The language of § 410(b) is similarly instructive:

> In any case in which the Register of Copyrights determines that . . . the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register shall *refuse* registration . . . .

This section is the flip side to the requirement that the material be examined before registration. Upon examination, this provision allows the Register either to "register the claim" or "refuse registration"—in any event,

---

[5] As we discuss below, the Act makes an exception for works covered by the Berne Convention.

requiring an affirmative act by the Copyright Office disallowing registration if the Register believes the material is not an original copyrightable work under § 102.

Section 408 supports our view that registration is not automatic:

> the owner of copyright . . . *may* obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708.

(emphasis added). This provision, like the others, envisions substantive review of the material by the Register of Copyrights. If it were otherwise, "the verb would be 'shall obtain'" instead of "may obtain." *Corbis Corp. v. UGO Networks, Inc.*, 322 F. Supp. 2d 520, 522 (S.D.N.Y. 2004).

A final provision of the Act underscores our view of the statutory scheme. Section 501(b), establishing remedies under the Act, states that "[t]he legal or beneficial owner of . . . a copyright is entitled, *subject to the requirements of section 411*, to institute an action for any infringement of that particular right." (emphasis added). This statutory language clearly instructs that a copyright owner can sue for infringement *only after* the copyright is registered, or registration is refused.

Taken together, these statutory provisions stand for the proposition that registration, or its refusal, requires more than the simple receipt of materials submitted by an author, and does not occur until the Register of Copyrights takes action.

## 2. Interpretations of the Plain Language of the Statutes

Despite the Act's seemingly plain language, courts construing these provisions are split into two competing interpretive camps: The "Registration approach," which we have adopted, and the "Application approach."

### *a. The Registration Approach*

Courts employing the Registration approach interpret the Act using the plain language of Title 17, as we have done. We are in good company. Indeed, even well before the 1976 Act, Judge Learned Hand concluded that the plain language of Title 17 allows copyright owners to sue for infringement only after a copyright is actually registered by the Copyright Office. *See Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.,* 260 F.2d 637, 640-41 (2d Cir. 1958) ("the text of the [statute] denies the right to sue for infringement 'until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with' . . . . Since the owner must submit an application and pay the required fees in order to make a deposit, 17 U.S.C. § 202.3(b) (1952 ed. Supplement V), we can think of no other added condition for 'registration' but acceptance by the Register.").

A number of courts have found this approach the better reading of the Act. For example, the Eleventh Circuit in *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 (11th Cir. 1990), held, in dismissing an infringement action

as premature, that the "registration requirement is a jurisdictional prerequisite to an infringement suit."  While this is the only circuit court decision to reach the issue, a number of district courts have adopted the Registration approach.  For example, in *Mays & Assocs. v. Euler*, 370 F. Supp. 2d 362, 368 (D. Md. 2005), the district court agreed in construing § 411 that actual registration is a jurisdictional prerequisite, because the "term application is used in the same section [as the term registration] and is clearly something separate and apart from registration."  Another district court, focusing on a different provision of the Act, recognized that "Section § 410(a)'s requirement of 'examination' would be meaningless if filing and registration were synonymous."  *Robinson v. Princeton Review, Inc.*, No. 96-CIV-4859, 1996 WL 663880, \*7 (S.D.N.Y. 1996).  Lastly, the district court in *Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*, 315 F. Supp. 2d 1053, 1056 (C.D. Cal. 2004), found that the Register's discretion to refuse copyright registration "drives an iron wedge" between mere "application" and actual "registration" as the sine qua non of registration.[6]

While we generally agree with these courts in construing the Act, we have one minor disagreement concerning the issuance of the certificate.  A few courts

---

[6] Other courts adopting this approach include:  *Goebel v. Manis*, 39 F. Supp. 2d 1318, 1320 (D. Kan. 1999); *Miller v. CP Chems., Inc.*, 808 F. Supp. 1238, 1241 (D.S.C. 1992); and *Demetriades v. Kaufmann*, 680 F. Supp. 658, 661 (S.D.N.Y. 1988).

have held that the Act requires an applicant to first obtain the paper certificate from the Copyright Office as a prerequisite to filing an infringement action. *See, e.g., Strategy Source, Inc. v. Lee*, 233 F. Supp. 2d 1, 3-4 (D.D.C. 2002) (finding copyright owners cannot sue for infringement until they receive a certificate of registration from the copyright office); *Loree Rodkin Mgmt. Corp*, 315 F. Supp. 2d at 1055 (same). In our view, however, the language of the foregoing sections demonstrates that registration is separate from the issuance of a registration certificate and that a court's jurisdiction does not turn on the existence of a paper certificate, but rather on the fact of registration, however it is demonstrated. We believe that statutory language commands this result for two reasons.

First, § 410(a) says after the "Register of Copyrights determines that . . . the material constitutes copyrightable subject matter" it "shall register the claim and issue a certificate." The "and issue a certificate" phrase in § 410(a) highlights the fact that registration does not occur upon issuance of a certificate of registration, but rather independently of, and before, the issuance of a certificate. The paper certificate does play an important role in judicial proceedings, however. Under § 410(c), the certificate is prima facie evidence of the validity of the copyright, a considerable benefit to a plaintiff in an infringement action, but it is not required for registration to occur.

Second, the conspicuous absence of the words "certificate" or "certification" in § 411 dictate that registration is separate from the issuance of a certificate of registration. If the opposite were true, § 411 would prevent copyright owners from suing until they received their paper certificate, which seems contrary to the overall thrust of the provision. [7] As we noted, although the paper certificate has evidentiary value, it does not drive the existence of federal jurisdiction. Therefore, suits for infringement can be brought when a copyright is registered, and such registration occurs when the Copyright Office approves the application.

### b. The Application Approach

The second interpretive camp rejects the Registration approach. The Application approach interprets Title 17 using a policy-based methodology. A representative case is from the Fifth Circuit. In *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384, 386-87 (5th Cir. 1984), the court, without much elaboration, held that federal jurisdiction is satisfied merely by proving "payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application." *See also Lakedreams v. Taylor*, 932 F.2d

---

[7] Such a rule is hard to imagine considering the fact that a certificate could easily be lost. In addition, delays could arise between the registration of the copyright and the receipt of a certificate. *See* http://www.copyright.gov/help/ faq/faq-what.html#certificate (last visited July 25, 2005) (stating that certificates are issued typically between four to five months after submission).

1103, 1108 (5th Cir. 1991) (same). These courts are also in good company. According to one of the leading treatises on copyright law, this is the preferable approach since it most efficaciously facilitates the judicial protection of copyrights through infringement actions. *See* Melville B. Nimmer, Nimmer on Copyright, Vol. 2 § 7.16[B][1][a], p. 7-154-56.

Looking to the Act, courts adopting the Application approach conclude that because a copyright owner can sue regardless of whether an application for registration is ultimately granted or rejected, delaying the date on which a copyright owner can sue is a senseless formality. *See* Nimmer, § 7.16[B][1][a][i]; *Apple Barrel Prod., Inc.*, 730 F.2d at 386-87 (citing Nimmer); *Foraste v. Brown Univ.*, 248 F. Supp. 2d 71, 77 n.10 (D.R.I. 2003) (discussing rationale for Application approach). These courts also rely on the language of § 408, that registration is not a condition of copyright protection, and § 410(d), that once a copyright is registered, the effective date of the registration relates back to the date the Copyright Office received the last of the filing materials (i.e., the deposit, fee, and application). *See* 17 U.S.C. § 410(d); *Foraste*, 248 F. Supp. 2d at 77 n.10.

Finally, these courts look to the date of the application for registration as "a condition to filing an infringement action, [but] issuance of a registration certificate is a condition to statutory damages" and other statutory remedies.

-17-

Nimmer, § 7.16[B][1][a][i]. Thus, the argument goes, a copyright owner can get into court without being held hostage by the vagaries of the Copyright Office in its ministerial act of issuing the certificate. *See International Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 72 (D.D.C. 2000) (adopting the Application approach because it "best effectuate[s] the interests of justice and promote[s] judicial economy"). [8]

The Application approach, at first glance, has some appeal. Indeed, as discussed above, it is odd that one can possess a copyright but be unable to file suit until it is "voluntarily" registered by the copyright holder. What is more, the scheme allows an infringer to dilute a copyright until a government official is able to sift through and approve what is surely a large stack of copyright registration applications. [9] Courts adopting the Application approach plausibly claim that their approach provides a sort of rough justice because it allows copyright owners to file suit while still maintaining the requirement that an owner

---

[8] Other courts that have adopted the Application approach include: *Well-Made Toy Mfg. v. Goffa Int'l.,* 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002); and *Havens v. Time Warner, Inc.*, 896 F. Supp. 141, 142-43 (S.D.N.Y. 1995).

[9] Since copyright is automatic upon publication, § 408, and the effective date of registration relates back to the date of application, § 410(d), other courts have read the Act to make application the jurisdictionally critical event. In our view, the existence of the copyright by itself does not speak to the Act's otherwise specific grant of federal court jurisdiction upon registration. As to the relation-back effect of registration, the effective date serves other purposes under the Act, such as the term of registration. It is not logical to assume that the relation-back provision subsumes the explicit requirements of § 411 and § 410(a).

obtain a certificate before a court can invoke the remedies contained in Title 17. *See* Nimmer, § 7.16[B][1][a].

Whatever the practical force of this argument, we cannot ignore the plain meaning of the statute, nor change the legislative scheme. *See Strategy Source, Inc.*, 233 F. Supp. 2d at 4 ("To conclude that registration or the refusal of registration . . . are not jurisdictional prerequisites is to disregard the plain language of these statutes and to in effect re-write them."). There are three reasons we think the Application courts' statutory analysis is wrong. First, this approach requires a topsy-turvy reading of Title 17. Title 17's language does not convey certain remedies and benefits upon application and other remedies and benefits upon registration. The remedies are part of a single package.

Second, the argument that copyright holders are left without a remedy until registration begs the question. Congress created significant incentives for registration under the Act. Every remedy outlined in Title 17, including injunctions, is conditioned upon a copyright owner having registered the copyright. *See* 17 U.S.C. § 501 (permitting only those copyright owners who have met "the requirements of section 411, to institute an action for [] infringement"). It is not illogical for Congress to condition the remedies of the Act to those who register under the Act. Congress could very reasonably have concluded that these rights and remedies are the "carrot" to induce registration

-19-

and the "stick" is the lack of federal court jurisdiction until registration is accomplished.

Finally, the Application approach allows for shifting legal entitlements. If, for example, an applicant could obtain the advantage of the presumption that the copyright is valid upon application, *see* 17 U.S.C. § 408(c), but then, after examination the Register of Copyrights determined the material is not copyrightable, the presumption of validity would swing back and forth. [10] Such a predicament would generate uncertainty in copyright litigation that the Act was designed to moderate.

In conclusion, we reject the proposition that § 411 confers federal court jurisdiction for an infringement action upon mere submission of a copyright application to the Copyright Office. In our view, the statute requires more: actual registration by the Register of Copyrights. Until that happens, an infringement action will not lie in the federal courts.

---

[10] For example, in *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1101 (N.D. Cal. 2002), "Napster argue[d] that . . . works with pending registration applications are not entitled to the same rebuttable presumption as registered works . . . . [However,] 17 U.S.C. section 410(d), states that '[t]he effective date of a copyright registration is the day on which an application . . . [is] received in the Copyright Office.' Hence, works with pending registrations will be given the benefit of the presumption of ownership."

### 3. Subsequent Acts of Congress

Our interpretation of the Act is also supported by two of Congress's changes to the statute—one in 1988, and the other in April 2005.

#### a. 1988 Amendments.

In 1988, Congress considered the Berne Convention Implementation Act (Berne Act), which sought to ally the United States with a set of international rules and regulations, known as the Berne Convention, that protects intellectual property in the global marketplace and is adhered to by much of the global community. The Berne Convention eliminates most, if not all, formalities that are required to obtain and enforce copyrights. *See* Berne Convention for the Protection of Literary and Artistic Works, Art. 5(2) ("The enjoyment and the exercise of these rights shall not be subject to any formality").

As Congress considered the Berne Act, a report issued by the Senate Judiciary Committee expressed concern that § 411(a)'s registration requirement was a "formality" incompatible with the text of the Berne Convention. *See* S. Rep. No. 100-352, at 14, *reprinted in* 1988 U.S.C.A.A.N. 3706, 3719 ("the committee has concluded that section 411(a) . . . is incompatible with Article 5(2) of Berne."). The Senate Judiciary Committee proposed to alleviate this incompatibility by changing § 411(a) to read "registration is not a prerequisite to

the institution of a civil action for infringement of copyright." *Id.* at 46, 3743.

As one senator said in arguing in favor of the amendment:

> [r]egistration . . . [while] not, technically speaking, a condition for the existence of copyright, . . . is, however a precondition for the exercise of any of the . . . rights conferred by copyright . . . . This metaphysical distinction between the existence of a right . . . and the exercise of that right [is not] maintainable under . . . our legal tradition which disfavors . . . rights without remedies.

S. Rep. 100-352, at 18, 3723. However, the House of Representatives did not agree and rejected the Senate's proposed modification. *See* 134 Cong. Rec. H. 10091, 10095 ("The House passed bill left current law intact, finding that current recordation and registration are not formalities prohibited by Berne.").

In the end, Congress passed a narrower amendment. The amendment added the language to § 411 excepting certain foreign works from the registration requirement—registration is necessary "[e]xcept for actions for infringement of copyright in Berne Convention works whose country of origin is not the United States." 17 U.S.C. § 411. The legislative compromise created "a two-tier solution . . . . Registration is continued as a prerequisite to suit by *domestic* authors. Only foreign origin works are excepted from the registration requirement." 134 Cong. Rec. H. at 10095 (emphasis added).[11] The result

_____

[11] This compromise was made possible by the fact that the Berne Convention "does not forbid its members [from] impos[ing] formalities on works

(continued...)

-22-

confirms our view of the Act: copyrights that originate in the United States must be registered before the owner can sue for infringement. *See* 17 U.S.C. § 411(a). Foreign copyrights, on the other hand, are enforceable at fixation.

At first glance, this bifurcated scheme seems illogical. However, when one considers the reasons for the scheme, it gains merit. The passage of the Copyright Act of 1976 created myriad incentives for copyright owners to register their copyrights, as discussed above. These incentives ensure that most "significant work[s] [are] registered" and that the Library of Congress receives copies of these works. S. Rep. 100-352, at 20, 3725. While the most obvious incentive is that one cannot sue for infringement unless the copyright is registered, *see* 17 U.S.C. § 411(a), many of the incentives discussed above provide "sound business reasons for registration wholly apart from the prospect of infringement litigation." S. Rep. 100-352, at 20, 3725. Thus, it is clear that in passing the original Copyright Act of 1976 and the Berne Act in 1988, Congress sought to create and retain the incentives to registration, make certain benefits available only to registrants, and, in fact, condition federal court intervention on registration of the copyright. The Berne amendments carve out an exception for

---

[11](...continued)
first published in its own territory." S. Rep. 100-352, at 18, 3723.

foreign works that accommodate treaty concerns without compromising the essential jurisdictional requirements for domestic works.

It is also worth noting that in 1993 Congress again took up the question of whether to eliminate registration as a prerequisite to filing suit for infringement. *See* Copyright Reform Act of 1993, H.R. 897, 103d Congress (1993). The 1993 proposal went so far as to completely rewrite 17 U.S.C. §§ 410 and 411 so that registration was not a requirement to file an infringement suit. *See id.* Congress did not adopt the proposal.

### b. *2005 Amendments.*

On April 27, 2005 Congress amended portions of Title 17 through the Family Entertainment and Copyright Act of 2005, P.L. 109-9 (FECA). Specifically, FECA amended § 411 to allow a copyright owner to sue for infringement if the copyright is either "registered" or "preregistered." FECA also amended 17 U.S.C. § 408 to require the Register to further define preregistration[12]

---

[12] (f) Preregistration of works being prepared for commercial distribution.

(1) Rulemaking. Not later than 180 days after the date of enactment of this subsection [enacted April 27, 2005], the Register of Copyrights shall issue regulations to establish procedures for preregistration of a work that is being prepared for commercial distribution and has not been published.

(2) Class of works. The regulations established under paragraph (1) shall permit preregistration for any work that is in a class of works that the Register determines has had a history of infringement prior to authorized commercial

(continued...)

-24-

As a result of this amendment, an additional class of works pending registration will support an infringement action.

The Register of Copyrights has yet to issue regulations or guidance regarding preregistration. We thus are not at a point to determine whether the works at issue in this case are eligible for preregistration. We note, however, that FECA was concerned, in large part, with the piracy of movies and the subsequent sale and distribution of illegal copies of movies. Whatever the Register of Copyrights eventually determines, however, the adoption of FECA further

---

[12](...continued)
distribution.

(3) Application for registration. Not later than 3 months after the first publication of a work preregistered under this subsection, the applicant shall submit to te Copyright Office–

(A) an application for registration of the work;

(B) a deposit; and

(C) the applicable fee.

(4) Effect of untimely application. An action under this chapter [17 USCS §§ 401 et seq.] for infringement of a work preregistered under this subsection, in a case in which the infringement commenced no later than 2 months after the first publication of the work, shall be dismissed if the items described in paragraph (3) are not submitted to the Copyright Office in proper form within the earlier of–

(A) 3 months after the first publication of the work; or

(B) 1 month after the copyright owner has learned of the infringement.

confirms our statutory analysis. Indeed, the availability of a preregistration

scheme would in whole or in part address the problem presented by this case: the

need to sue for infringement to prevent dilution of a copyright but the inability to

do so without completed registration.

## C.  Registration and the Question of Proof

Our conclusion that suits for infringement can be brought only when the

copyright is registered leaves open one question: how does a litigant demonstrate

to a court that a copyright is registered? While 17 U.S.C. § 410(c) states that "the

certificate of registration . . . shall constitute prima facie evidence of the validity

of the copyright," it does not prohibit the use of other evidence to demonstrate

validity. [13]  A party may file suit, for example, alleging a registered copyright, and,

like any other jurisdiction allegation, it may be challenged in a motion to dismiss

or summary judgment. Adequate proof may come in the form of a certificate of

registration from the copyright office. If such a certificate is presented, the

copyright owner is entitled to a presumption that the copyright is valid, as set

forth in 17 U.S.C. § 410(c). Even if the copyright owner cannot present a

certificate, the owner can still attempt to prove registration through other means,

---

[13] We will not speculate what evidence a litigant could present or what weight that evidence might or should carry. However, we acknowledge that this evidence could be a letter similar to the one presented by La Resolana in the case before us or perhaps an affidavit from a person with first-hand knowledge of a copyright's registration.

such as testimony or other evidence from the copyright office. Such other evidence, however, does not entitle a copyright owner to the presumption of validity that § 410 confers on a certificate. Upon proof of registration the copyright is valid and subject to the remedies set forth in Title 17. Once a copyright owner proves registration, absent other defects, the court has jurisdiction and the infringement suit can go forward.

In the present case, La Resolana's copyright was not registered nor did it possess a certificate of registration when suit was filed. Sometime after Clay Realtors' filed its motion to dismiss, La Resolana attempted to prove registration with a letter from the copyright office. [Aplt. App. 76] The letter stated, among other things, the copyright office approved the architectural drawings for registration on January 22, 2004 (with a backdated effective date of November 19, 2003), but that the paper certificate could be delayed for up to six months.

Ordinarily, in our view, that should have been sufficient evidence of registration. The district court, however, rejected La Resolana's offer of proof, finding the letter to be unauthenticated hearsay. La Resolana has not appealed the court's evidentiary ruling, so we must accept the determination that registration had not occurred at the time the court entered its order of dismissal. As La Resolana argues, and we agree, the better practice for the court in examining its subject matter jurisdiction is to review the jurisdictional facts, relying on extrinsic

evidence if necessary. *See Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004); *Cunningham v. BHP Petroleum Great Britain PLC*, – F.3d –, No. 03-1356, slip op. (10th Cir. July 5, 2005). In light of its evidentiary ruling, however, on the record before the district court, La Resolana had not asserted actual registration of its drawings. Thus, the district court concluded it lacked jurisdiction under § 411. We express no opinion as to whether the jurisdictional defect could be cured after commencement of the infringement action. [14]

### III. CONCLUSION

A suit for copyright infringement cannot be brought unless and until the copyright is registered. Proving a copyright is registered can be accomplished in a variety of ways and the adequacy of such proof will vary. Presentation of a copyright certificate, though, is not required to demonstrate registration. Because La Resolana's architectural drawings were not registered at the time this suit was brought, the district court properly dismissed the complaint. Therefore, we AFFIRM.

---

[14] Some courts faced with a similar situation have found that a litigant can cure a jurisdictionally defective complaint by amending it. *See, e.g., M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488-89 (11th Cir. 1990) (allowing amended complaint to satisfy subject matter jurisdiction requirement); *Positive Black Talk, Inc. v. Cash Money Records, Inc*, Nos. 03-30625, 03-30702, 2004 WL 2915340, *3 (5th Cir. Dec. 17, 2004) (same).