# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COSMETIC IDEAS, INC., a California
corporation, doing business as
SWEET ROMANCE JEWELRY
MANUFACTURING,
*Plaintiff-Appellant,*

v.

IAC/INTERACTIVECORP, a Delaware
corporation; HOME SHOPPING
NETWORK, INC., a Delaware
corporation; HSN LP, a Delaware
limited partnership; HSN GENERAL
PARTNER LLC, a Delaware limited
liability company,
*Defendants-Appellees.*

No. 08-56079

D.C. No.
DV-08-2074 (R)
(RZx)

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel Real, District Judge, Presiding

Argued and Submitted October 6, 2009
Withdrawn October 19, 2009
Resubmitted April 27, 2010
Pasadena, California

Filed May 25, 2010

Before: Andrew J. Kleinfeld and Richard C. Tallman,
Circuit Judges, and David G. Trager,* District Judge.

*The Honorable David G. Trager, United States District Judge for the
Eastern District of New York, sitting by designation.

Opinion by Judge Trager

**COUNSEL**

Evan S. Cohen and S. Martin Keleti, Los Angeles, California, for plaintiff-appellant Cosmetic Ideas, Inc.

Edward T. Colbert, William H. Merone, and Erik C. Kane, Washington, DC, and Vicki E. Land, Los Angeles, California, for defendants-appellees HSN LP, IAC/InterActiveCorp, Home Shopping Network, Inc. and HSN General Partner LLC.

**OPINION**

TRAGER, District Judge:

Plaintiff-Appellant Cosmetic Ideas, Inc. ("Cosmetic") appeals the decision of the United States District Court for the Central District of California ("district court") dismissing its claims against Defendants-Appellees IAC/InterActiveCorp, Home Shopping Network, Inc., HSN LP, and HSN General Partner LLC (collectively, "HSN") for lack of subject-matter jurisdiction. The district court determined that Cosmetic failed to comply with the registration requirement of 17 U.S.C. § 411(a), which makes registration of a copyright a prerequisite to bringing an infringement suit, then concluded that lack of registration deprived it of jurisdiction. Cosmetic contends that it complied with § 411(a), because it submitted a completed registration application to the Copyright Office before instituting its infringement action. HSN argues that registration occurs only after the Copyright Office has affirmatively granted a registration.

**Background**

**(1)**

In 1997, Cosmetic, doing business as Sweet Romance Jewelry Manufacturing, created a piece of costume jewelry known as the "Lady Caroline Lorgnette" ("the necklace"). Cosmetic began manufacturing and selling copies of the necklace in 1999, and continues to manufacture and sell copies through various stores and websites. Cosmetic claims that sometime between 2005 and 2008, HSN began manufacturing and distributing copies of a "virtually identical" necklace.

On March 6, 2008, Cosmetic submitted an application to the Copyright Office for registration of its copyright in the necklace, and received confirmation of receipt of the application on March 12, 2008. On March 27, 2008, Cosmetic filed a complaint alleging that HSN had infringed on Cosmetic's copyright in the necklace. Although the Copyright Office ultimately issued Cosmetic a registration certificate for its copyright in the necklace, it did not do so before Cosmetic filed its complaint.[1]

On June 2, 2008, HSN filed a motion to dismiss for failure to state a claim and lack of subject-matter jurisdiction. HSN argued that Cosmetic did not possess a valid copyright registration when it commenced its action, and thus the court lacked subject-matter jurisdiction over the claim of copyright infringement. On June 17, 2008, the district court granted the motion to dismiss on the basis that it lacked subject-matter jurisdiction. Cosmetic timely appealed.

---

[1]At oral argument and in supplemental briefing, Cosmetic confirmed that it has now received a registration certificate and has filed a new infringement action against HSN, which has been stayed pending the outcome of this appeal. *See Cosmetic Ideas, Inc. v. HSN, Inc.*, CV-09-01215 (R) (RZx), Doc. No. 29 (C.D. Cal. May 18, 2009).

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

**(2)**

The district court's dismissal for lack of subject-matter jurisdiction is reviewed de novo. *Rattlesnake Coal v. U.S. EPA*, 509 F.3d 1095, 1100 (9th Cir. 2007). In this case, the district court's decision to dismiss was necessarily—though without discussion—based on its interpretation of the Copyright Act, 17 U.S.C. § 101 *et seq.* (2006). Questions of statutory interpretation are reviewed de novo. *Mollison v. United States*, 568 F.3d 1073, 1075 (9th Cir. 2009).

**Discussion**

**(1)**

**[1]** We first address HSN's argument that § 411(a)'s registration requirement—which mandates that a copyrighted work be registered before an infringement action can be brought—is a jurisdictional prerequisite to suit. In *Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S. Ct. 1237 (2010), the Supreme Court held otherwise.[2] Specifically, *Reed Elsevier* held that, although "[s]ection 411(a)'s registration requirement is a precondition to filing a claim," it "does not restrict a federal court's subject-matter jurisdiction." 130 S. Ct. at 1241. Therefore, the district court's dismissal of Cosmetic's complaint on the basis of lack of subject-matter jurisdiction—which must have been predicated on a conclusion that Cosmetic had not registered its copyright—was error.

---

[2]*Reed Elsevier* was pending before the Supreme Court at the time of the October 6, 2009 oral argument in this case. Submission was withdrawn on October 19, 2009, pending the Supreme Court's opinion. *Reed Elsevier* was handed down on March 2, 2010, and the parties have both filed briefs at this Court's direction discussing the effect of that case here. This case was resubmitted for decision on April 27, 2010.

**(2)**

However, this conclusion does not end our inquiry, as the district court still may have correctly dismissed the suit on another basis. This court "may affirm the district court on any ground supported by the record, even if the ground is not relied on by the district court." *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 874 (9th Cir. 1987). Below, HSN moved to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, HSN argued that Cosmetic failed to register the necklace, and post-*Reed Elsevier*, registration is an element of an infringement claim, rather than a jurisdictional bar.

[2] Thus, we are asked to answer the question: What does it mean to "register" a copyrighted work? Stated another way, is a copyright registered at the time the copyright holder's application is received by the Copyright Office (the "application approach"), or at the time that the Office acts on the application and issues a certificate of registration (the "registration approach")?[3] Our sister circuits have split in answering this question.[4] For instance, the Fifth and Seventh Circuits

---

[3]The Tenth Circuit appears to have coined the terms "application approach" and "registration approach" in describing the two schools of thought. *See La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1202-04 (10th Cir. 2005), *abrogated in part by Reed Elsevier*, 130 S. Ct. at 1243 & n.2.

[4]The district courts are also split, sometimes even within the same circuit. District courts adopting the application approach include: *Tri-Mktg., Inc. v. Mainstream Mktg. Servs., Inc.*, No. CV-09-13, 2009 WL 1408741, at *3 (D. Minn. May 19, 2009); *Precision Automation, Inc. v. Technical Servs., Inc.*, 628 F. Supp. 2d 1244, 1248 (D. Or. 2008); *Prunté v. Universal Music Group*, 484 F. Supp. 2d 32, 39-40 (D.D.C. 2007); *Phoenix Renovation Corp. v. Rodriguez*, 403 F. Supp. 2d 510, 514-15 (E.D. Va. 2005); *Iconbazaar, L.L.C. v. America Online, Inc.*, 308 F. Supp. 2d 630, 633-34 (M.D.N.C. 2004); *Forasté v. Brown Univ.*, 248 F. Supp. 2d 71, 77-78 (D.R.I. 2003); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F.

have adopted the application approach. *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386-87 (5th Cir. 1984); *Chicago Bd. of Educ. v. Substance, Inc.,* 354 F.3d 624, 631 (7th Cir. 2003). The Tenth and Eleventh Circuits have adopted the registration approach. *La Resolana,* 416 F.3d at 1202-04; *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1489 (11th Cir. 1990), *abrogated in part by Reed Elsevier,* 120 S. Ct. at 1243 & n.2.

We now turn to this issue.[5]

---

Supp. 2d 147, 157 (E.D.N.Y. 2002), *aff'd*, 354 F.3d 112 (2d Cir. 2003); *Dielsi v. Falk*, 916 F. Supp. 985, 994 n.6 (C.D. Cal. 1996); *Havens v. Time Warner, Inc.*, 896 F. Supp. 141, 142-43 (S.D.N.Y. 1995); *Sebastian Int'l, Inc. v. Consumer Contact (PTY) Ltd.*, 664 F. Supp. 909, 912 (D.N.J. 1987), *vacated on other grounds*, 847 F.2d 1093 (3d. Cir. 1988).

District courts that adhere to the registration approach include: *Specific Software Solutions, LLC v. Inst. of Workcomp Advisors*, 615 F. Supp. 2d 708, 715-16 (M.D. Tenn. 2009); *Just Water Heaters, Inc. v. Affordable Water Heaters and Plumbing, Inc.*, No. C-05-4996, 2006 WL 449136, at *3 (N.D. Cal. Feb. 23, 2006); *Mays & Assocs., Inc. v. Euler*, 370 F. Supp. 2d 362, 370 (D. Md. 2005); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1112 (W.D. Wash. 2004); *Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.*, 315 F. Supp. 2d 1053, 1056-57 (C.D. Cal. 2004); *Corbis Corp. v. UGO Networks, Inc.*, 322 F. Supp. 2d 520, 521-22 (S.D.N.Y. 2004); *Strategy Source, Inc. v. Lee*, 233 F. Supp. 2d 1, 3-4 (D.D.C. 2002); *Brush Creek Media, Inc. v. Boujaklian*, No. C-02-3491, 2002 WL 1906620, at *4 (N.D. Cal. Aug. 19, 2002); *Gerig v. Krause Publ'ns, Inc.*, 33 F. Supp. 2d 1304, 1306 (D. Kan. 1999); *Ryan v. Carl Corp.*, No. C-97-3873, 1998 WL 320817, at *3 (N.D. Cal. June 15, 1998); *Kregos v. Associated Press*, 795 F. Supp. 1325, 1331 (S.D.N.Y. 1992), *aff'd*, 3 F.3d 656 (2d Cir. 1993); *Demetriades v. Kaufmann*, 680 F. Supp. 658, 661 (S.D.N.Y. 1988).

Many of these cases have been abrogated, in part, by the Supreme Court's decision in *Reed Elsevier,* 130 S. Ct. at 1243 & n.2.

[5]Although we addressed a similar issue in *Roth Greeting Cards v. United Card Co.*, that opinion does not control the outcome here, because it construed the language of the Copyright Act of 1909 ("1909 Act"), which has since been substantially amended. *See* 429 F.2d 1106, 1108-09 (9th Cir. 1970) (holding that under the 1909 Act, a plaintiff could maintain his action the day he fully complied with the registration requirements by mailing in a revised application, and that the revised application's filing date related back to the original application).

## A

We first note that, according to the representations of Cosmetic at oral argument and in subsequent briefing, the Copyright Office has now acted on Cosmetic's application and issued a certificate of registration of copyright in the necklace. Once a certificate is issued, the registration dates back to the date of application. 17 U.S.C. § 410(d). Thus, Cosmetic can now allege the registration element of an infringement claim, irrespective of whether registration accrues at application or issuance. Nonetheless, we address the issue of the point at which a work is registered because it is an unsettled issue of law in this Circuit, and because it is an issue "capable of repetition yet evading review" if the Copyright Office acts on the application during litigation. *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) (citing *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975)); *United States v. Brandau*, 578 F.3d 1064, 1067 (9th Cir. 2009).

## B

**[3]** In interpreting a statutory provision, we begin with the plain language of the statute. *See K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1081 (9th Cir. 2007). Section 411(a) of the Copyright Act of 1976 (the "Act" or "1976 Act") provides, in relevant part: "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."[6] 17 U.S.C. § 411(a). "Registration" is unhelpfully defined as "a registration of a claim in the original or the renewed and extended term of copyright." 17 U.S.C. § 101.

---

[6]Preregistration is allowed only for certain commercial works within categories that the Register of Copyrights has determined to have a history of infringement prior to commercial release, and is not applicable to the work in question here. *See* 17 U.S.C. § 408(f); 37 C.F.R. § 202.16(c) (2008).

Because the clause at issue gives no guidance in interpreting the meaning of "registration," we turn to the language of the statute as a whole to determine the intended meaning. *See United States v. Cruz-Gramajo*, 570 F.3d 1162, 1167 (9th Cir. 2009) ("While the starting point is always the language of the statute itself . . . [r]ather than focusing just on the word or phrase at issue, this court looks to the entire statute to determine . . . intent." (internal quotation marks and citations omitted)). An examination of the statutory language here, however, reveals ambiguity that leaves us no closer to determining which interpretation to adopt.

**[4]** Looking to the Act as a whole, copyright registration is addressed in five consecutive sections: §§ 408 through 412. Two subsections of the Act, § 410(a) and portions of § 411(a), contain language that suggests that registration requires some affirmative steps to be taken by the Copyright Office. Section 410(a) details the role of the Register of Copyrights ("the Register"):

> When, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register *shall register the claim* and issue to the applicant a certificate of registration under the seal of the Copyright Office.

17 U.S.C. § 410(a) (emphasis added). This provision places an active burden of examination and registration upon the Register, suggesting that registration is not accomplished by application alone. *See, e.g., Loree Rodkin*, 315 F. Supp. 2d at 1055 (reading the provision in this way). *But see Iconbazaar*, 308 F. Supp. 2d at 634 (pointing out that this section "could be read to apply only to the requirements for issuance of a registration certificate, not to the requirements for instituting an action for infringement").

The latter portion of § 411(a) can be read similarly. The portion of § 411(a) setting forth the registration requirement is followed by an exception:

> In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and *registration has been refused*, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

17 U.S.C. § 411(a) (emphasis added). Because registration in this subsection is juxtaposed with the separate act of delivering the necessary application materials to the Copyright Office, this subsection could be read to mean that Congress intended registration to require acceptance or refusal by the Register, not mere delivery. *See, e.g., Strategy Source*, 233 F. Supp. 2d at 3-4; *Loree Rodkin*, 315 F. Supp. 2d at 1055-56.

**[5]** Other sections of the Act, however, cast doubt on this interpretation. In particular, § 408 blurs the line between application and registration and favors the application approach. In setting forth the permissive registration requirements, § 408 states: "[T]he owner of copyright or of any exclusive right in the work *may obtain registration . . . by delivering* to the Copyright Office the deposit specified by this section, together with the application and fee specified . . . ." 17 U.S.C. § 408(a) (emphasis added). This section implies that the sole requirement for obtaining registration is delivery of the appropriate documents and fee. *See Prunté*, 484 F. Supp. 2d at 40 (concurring in this analysis and adopting the application approach); *Iconbazaar*, 308 F. Supp. 2d at 634 (same); *but see Ryan*, 1998 WL 320817, at *3 (adopting the registration approach and concluding that § 408(a) means "merely that the delivery of the application is a step the appli-

cant must take, not that delivery is sufficient by itself to obtain a registration").**[7]**

One final relevant subsection of the Act, § 410(d), could be read as supporting either the application or registration approach. Section 410(d) provides: "The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office." 17 U.S.C. § 410(d). Because this subsection dates a later-approved registration as of the date of its application, it supports the interpretation that application is the critical event. *See*, *e.g.*, *Dielsi,* 916 F. Supp. at 994 n.6; *Prunté*, 484 F. Supp. 2d at 40. However, because this back-dating does not occur until after the Copyright Office or a court has deemed the registration acceptable, the statute could be read to require action by the Register to effect registration. *See, e.g.*, *La Resolana*, 416 F.3d at 1204 n.9 ("It is not logical to assume that the relation-back provision subsumes the explicit requirements of § 411 and § 410(a)."); *Ryan*, 1998 WL 320817, at *2; *Brush Creek*, 2002 WL 1906620, at *3-4.

**[6]** We are not persuaded that the plain language of the Act unequivocally supports either the registration or application approach. Although in some places the Act seems to equate registration with affirmative approval by the Copyright Office, in others the Act suggests registration is accomplished by completing the process of submitting an application. This

---

**[7]**The Tenth Circuit read § 408(a) to support the registration approach by positing that "may," as used in that section, indicates that registration requires review. *See La Resolana*, 416 F.3d at 1201 ("This provision . . . envisions substantive review of the material by the Register of Copyrights. If it were otherwise, the verb would be 'shall obtain' instead of 'may obtain.' " (internal quotation marks omitted)). But the word "may," as used here, is better read to indicate that registration is now permissive, especially as the subsection is entitled "Registration Permissive"; if "shall obtain" were used, it would create a mandatory registration requirement.

ambiguity makes it necessary to go beyond the Act's plain language to determine which approach better carries out the purpose of the statute.

## C

When statutory language proves unclear, we work to discern its meaning by looking to "the broader context of the statute as a whole" and the purpose of the statute. *See United States v. Olander*, 572 F.3d 764, 768 (9th Cir. 2009) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). An understanding of the history of § 411 is helpful in discerning the statute's purpose. Section 411 is a product of the 1976 Act, which drastically amended the 1909 Act. *See* Pub. L. No. 94-553, 90 Stat. 2541 (1976); *see also* H.R. Rep. No. 94-1476, at 129 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5745. Under the 1909 Act, federal copyright protection attached only upon publication, and even then, only if proper notice, registration, and deposit occurred.[8] *See* H.R. Rep. No. 94-1476, at 129, 143, 146, 150. Protection of unpublished works was left to the states. *Id.* at 129. The 1976 Act, however, created a unitary system that attached federal copyright protection to all works—published and unpublished—at the time of their creation. Pub. L. No. 94-553, § 301(a) (codified at 17 U.S.C. § 301(a)); *see also* H.R. Rep. No. 94-1476, at 129. It also eliminated some of the prior formalities of copyright law by relaxing notice requirements and eliminating mandatory registration. *See* Pub. L. No. 94-553, §§ 301, 401-412 (codified at 17 U.S.C. §§ 301, 401-412); *see also* H.R. Rep. No. 94-1476, at 147, 150.[9] These changes vastly

---

[8]Unlike the 1976 Act's registration procedures, registration under the 1909 Act did not allow for any discretionary determination by the Register of Copyright. Rather, if the proper steps had been taken—publication, notice, deposit, and payment of a fee—"it [was] the duty of the Register of Copyrights to issue a certificate of registration under the seal of the copyright office." *Roth Greeting Cards*, 429 F.2d at 1108.

[9]Notice has since been made entirely permissive, *see* 17 U.S.C. § 401(a), as Congress further relaxed copyright formalities in order to join

increased the scope of works subject to copyright protection, thus providing an incentive to create expressive works. *See, e.g., Chicago Bd. of Educ.*, 354 F.3d at 631.

Although registration was made optional, Congress still valued having a robust federal register of existing copyrights. *See* H.R. Rep. No. 94-1476, at 158.[10] To this end, it chose to encourage copyright holders to register with the Office of Copyright through various statutory incentives. *See* 17 U.S.C. §§ 410-412. For instance, if a copyright holder secures a registration certificate within five years after first publication, such certificate will constitute prima facie evidence of both the validity of the copyright and the facts stated in the certificate. 17 U.S.C. § 410(c). Moreover, certain remedies, such as statutory damages and attorney's fees, are available only after registration.[11] 17 U.S.C. § 412. Finally, registration is required for U.S. works prior to bringing any infringement action.[12] 17 U.S.C. § 411(a). Indeed, because registration is not mandatory under the Act, copyright holders frequently register specifically for the purpose of being able to bring suit.

---

the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"), which requires that foreign works not be subject to formalities. *See* Berne Convention art. 5, Sept. 9, 1886 (Paris Text 1971), S. Treaty Doc. No. 99-27; Pub. L. No. 100-568, Sec. 7, 102 Stat. 2853 (1988) (adopting laws consistent with the Berne Convention, thus becoming party to the agreement).

[10]In discussing the need for proposed registration incentives in the 1976 Act, the House Judiciary Committee explained: "Copyright registration for published works, which is useful and important to users and the public at large, would no longer be compulsory, and should therefore be induced in some practical way." H.R. Rep. No. 94-1476, at 158.

[11]For infringement occurring prior to the effective date of registration, a copyright owner may still obtain actual damages and/or injunctive relief. *See* 17 U.S.C. §§ 502-505.

[12]As a result of the Berne Convention's mandate that foreign works not be subject to formalities, § 411's pre-suit registration requirement does not apply to non-U.S. works. *See* Berne Convention, art. 5.

**[7]** With this framework in mind, we conclude that the application approach better fulfills Congress's purpose of providing broad copyright protection while maintaining a robust federal register.

**[8]** First, the application approach avoids unnecessary delay in copyright infringement litigation, which could permit an infringing party to continue to profit from its wrongful acts. Section 411(a) allows a party, after applying for registration, to litigate the claim whether the Copyright Office accepts or rejects the registration. *See* 17 U.S.C. § 411(a) (permitting an applicant to bring an infringement suit after the Register has rejected his or her registration, so long as the Register is notified of the suit); *see also Forasté*, 248 F. Supp. 2d at 77 n.10; *Prunté*, 484 F. Supp. 2d at 40. Under the registration approach, however, a party must wait on the Copyright Office's affirmative acceptance or rejection, despite knowing that suit can proceed in either event. As the leading treatise on copyright explains, the registration approach thus creates a strange scheme: "[G]iven that the claimant . . . will ultimately be allowed to proceed regardless of how the Copyright Office treats the application, it makes little sense to create a period of 'legal limbo' in which suit is barred." *See* 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 7.16[B][1][a][i] (2008) ("*Nimmer*"). The application approach avoids this legal limbo—and avoids prolonging the period of infringement—by allowing a litigant to proceed with an infringement suit as soon as he has taken all of the necessary steps to register the copyright at issue.

Moreover, the application approach avoids delay without impairing the central goal of copyright registration. As explained above, copyright registration is now a voluntary procedure, with the pre-litigation registration requirement acting as an incentive to help Congress maintain a robust national register of copyrights. *See* H.R. Rep. No. 94-1476, at 158 ("Copyright registration for published works, which is useful and important to users and the public at large . . .

should . . . be induced in some practical way."). This goal, however, is accomplished equally by the registration and application approaches, as either approach requires a party to submit the information necessary to add the copyright to the federal registry. *See* 17 U.S.C. §§ 408-409 (setting forth the steps an applicant must take to register a copyright).

The registration approach's added requirement of affirmative approval or rejection before suit thus amounts to little more than just the type of needless formality Congress generally worked to eliminate in the 1976 Act. On this point, it is telling that even many courts adopting the registration approach have recognized that "construing the statute this way leads to an inefficient and peculiar result." *Brush Creek*, 2002 WL 1906620, at *4 (quoting *Ryan*, 1998 WL 320817, at *2); *Loree Rodkin*, 315 F. Supp. 2d at 1056-57 (same); *Strategy Source*, 233 F. Supp. 2d at 3 (same). We agree. It makes little sense to dismiss a case (which will likely be re-filed in a matter of weeks or months) simply because the Copyright Office has not made a prompt decision that will have no substantive impact on whether or not a litigant can ultimately proceed.

**[9]** Furthermore, in addition to being generally inefficient, in the worst-case scenario the registration approach could cause a party to lose its ability to sue. The Act provides a three-year statute of limitations for copyright infringement actions. 17 U.S.C. § 507(b). Thus, under the registration approach, a plaintiff who applied for registration towards the end of the three-year period could see the statute of limitations expire during the time it took the Copyright Office to act on the application. *See Nimmer* § 7.16[B][1][a][i] ("[G]iven . . . a three-year statute of limitations for recovery of all damages caused by copyright infringement, the narrow [registration] approach may indeed occasion complete inability to recover damages . . . ."). This result does not square well with § 410(d)'s mandate that an application's effective registration date should be the day that a completed application is

received. In specifying that registration is to be dated as of the date of application—not approval—Congress sought to ensure that an applicant did not suffer the consequences of a delay by the Register. *See* H.R. Rep. No. 94-1476 at 157 (noting that the provision is designed to "take[ ] account of the inevitable timelag between receipt of the application and other material and the issuance of the certificate . . . ."). Only the application approach fully protects litigants from any disadvantage caused by this timelag.

Finally, we find unpersuasive the argument that deference to the Register requires adoption of the registration approach. This argument posits that Congress structured the Act to require the Register's approval or rejection of registration before suit because it wanted the Register to determine the propriety of granting copyright registration in the first instance. *See, e.g., Strategy Source*, 233 F. Supp. 2d at 4. However, as *Nimmer* explains, "the pace of litigation entails that the Copyright Office will typically have granted or refused registration during its pendency." *Nimmer* § 7.16[B][1][a][i]. Thus, should the Register determine that it wanted to reject an application already in litigation, it would still have an opportunity to appear. *Id.* Furthermore, the Register's decision of whether or not to grant a registration certificate is largely perfunctory, and is ultimately reviewable by the courts.[13] There is, therefore, no compelling justification for delaying litigation until after the Register has acted on an application. The two processes—registration approval by the Copyright Office and an underlying infringement case in the

---

[13]The Register looks only to ensure that the material deposited is "copyrightable subject matter" and that the legal and formal requirements of the Title have been met. 17 U.S.C. § 410(a). After the Register's determination, the courts are empowered to review any denial of a certificate, and approval by the Register gives an applicant only prima facie evidence of copyright, leaving the courts to make the ultimate determination in either instance. *See* §§ 411(a), 410(c).

courts—can occur simultaneously with little or no prejudice to any involved parties.**¹⁴**

**[10]** We therefore hold that receipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a). This interpretation ensures the broad copyright protection that the 1976 Act provided. It "best effectuate[s] the interests of justice and promote[s] judicial economy." *Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of North America*, 81 F. Supp. 2d 70, 72 (D.D.C. 2000). This approach also fully accomplishes the central purpose of registration— the compilation of a robust national register of existing copyrights—and at the same time avoids unfairness and waste of judicial resources. *Cf. Lau Ow Bew v. United States*, 144 U.S. 47, 59 (1892) ("Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion."); *United States v. Leon H.*, 365 F.3d 750, 753 (9th Cir. 2004) (citing *Lau Ow Bew*, 144 U.S. at 59).

## (3)

**[11]** Under the application approach, Cosmetic satisfied § 411(a)'s registration requirement before it instituted this action. Cosmetic alleged in its complaint that the Copyright Office received its complete application on March 12, 2008, weeks before Cosmetic filed its complaint. Thus, § 411(a)

---

**¹⁴**In fact, a defendant is in some ways aided by a plaintiff's lack of a certificate, because if a party proceeds to litigation without a registration certificate, it bears a greater evidentiary burden of proving the validity of its copyright. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.").

does not bar Cosmetic's infringement claim, which should proceed on its merits.

## Conclusion

The judgment of the district court dismissing this action is VACATED and REVERSED. This case is REMANDED to the district court for further proceedings consistent with this opinion.