**NUTRIVITA LABORATORIES, INC., Plaintiff,**

v.

**VBS DISTRIBUTION INC., et al., Defendants.**

Case No.: SACV 13-01635-CJC(DFMx)

United States District Court, C.D. California, Southern Division.

Signed January 27, 2016

Anthony B. Cartee, Ng Do–Khanh, Irvine, CA, Daniel D. Do-Khanh, Ng Do–Khanh PC, Costa Mesa, CA, for Plaintiff.

Henry P. Friesen, Friesen Guy and Associates, Irvine, CA, William Edward Levin, Levin Intellectual Property Law Group, Laguna Beach, CA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND SANCTIONS

CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

Plaintiff Nutrivita Laboratories, Inc. ("Nutrivita") brought this action against VBS Distribution Inc., Kings Herb Corporation, and Joseph C. Nguyen (collectively, "VBS"), alleging that VBS unlawfully copied its trade dress in violation of the Copyright Act, the Lanham Act, and various state statutes. The parties evidently reached an agreement that the case should be dismissed, and on December 23, 2015, Nutrivita filed a stipulation to dismiss the case with prejudice, (Dkt.40), which the Court granted on December 30, 2015. Currently before the Court is VBS's motion for attorneys' fees and sanctions. (Dkt.41.) For the following reasons, that motion is DENIED.[1]

### II. BACKGROUND

Plaintiff Nutrivita is a marketer and distributor of what it calls "nutraceutical supplements," including a dietary supplement called Arthro–7. (Dkt. 17 ("First Amended Complaint" ("FAC")) ¶ 10.) Arthro–7 is sold in capsule form and was developed to promote joint health. (*Id.* ¶ 11.) Arthro–7 is a registered trademark. (*Id.* ¶ 11.)

Defendant VBS markets and sells a competing product called "JN–7 Best," which is apparently also a dietary supple-

---

1. Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed.R.Civ.P. 78; Local Rule 7–

15. Accordingly, the hearing set for February 8, 2016 at 1:30 p.m. is hereby vacated and off calendar.

ment, sold in capsule (or caplet) form, and designed to promote joint health. (FAC ¶ 15.) Arthro–7 and JN–7 Best are marketed toward the same set of consumers and are occasionally sold side-by-side in stores. (*Id.* ¶ 16.) In September 2013, Nutrivita noticed that the packaging for JN–7 Best "included the same design elements found on the Arthro–7 label, including the same or similar fonts, colors, and patterns." (*Id.* ¶ 15.) Believing that VBS was attempting to "unfairly capitaliz[e] on [Nutrivita's] goodwill," (FAC ¶ 16), Nutriva sent VBS a demand letter on October 8, 2013. (*See* Dkt. 44–3.) The letter accused JN–7 Best of "closely mimic[king] the name, label, style, and distinctive elements of Arthro–7's trademark, copyright, and trade dress" by "us[ing] the same color schemes, layout, almost identical fonts, and art to make the box and labels of [JN–7 Best] substantially similar and infringing [sic] of Arthro–7." (*Id.* at 1.) Nutrivita also highlighted a number of claims JN–7 Best's packaging made regarding the product's health, informing VBS that it believed those claims to be false and in violation of Food and Drug Administration regulations. (*Id.* at 1.) Nutrivita demanded that VBS immediately stop promoting, advertising, and selling JN–7 Best, disclose the quantities of JN–7 Best being held by VBS, and disclose the profits VBS had already earned from selling JN–7 Best. (*Id.* at 2.) Finally, the letter threatened suit if VBS did not respond and cooperate.

On October 12, 2013, Defendant Joseph C. Nguyen sent a polite letter back to Nutrivita, apologizing for the "confusion" between the products and telling Nutrivita that it was "not [VBS's] intention" to infringe its intellectual property. (Dkt. 44–4 at 1.) Nguyen also offered to sell JN–7 Best in bottle form only (i.e., without any cardboard box packaging) "until [VBS could] come up with a new design and a new color for [its] box." (*Id.*)

Apparently unhappy with this response, Nutrivita filed a complaint in this Court on October 18, 2013. The complaint alleged thirteen causes of action, for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, *et seq.*; (2) federal unfair competition under the Lanham Act; (3) trade dress infringement under the Lanham Act; (4) copyright infringement under the Copyright Act, 17 U.S.C. § 301 *et seq.*; trademark dilution under the Lanham Act; (6) false advertising under the Lanham Act; (7) false advertising under Cal. Bus. and Prof.Code § 17500; (8) contributory trademark infringement under the Lanham Act; (9) contributory trade dress infringement under the Lanham Act; (10) contributory copyright infringement under the Copyright Act; (11) contributory trademark dilution under the Lanham Act; (12) contributory false advertising under the Lanham Act; and (13) unfair competition under Cal. Bus and Prof.Code § 17200. (*See generally* FAC.) After Nutrivita served its complaint, Mr. Nguyen filed a motion to dismiss the case as to him on the ground that Nutrivita had inadequately alleged that he was an alter ego of VBS Distribution Inc. (Dkt.10.) That motion was granted with leave to amend, and Nutrivita filed a First Amended Complaint that adequately alleged alter ego liability. (Dkt.17.) Litigation then proceeded slowly. Counsel for VBS, Henry Friesen, fell seriously ill, and the parties stipulated to advance deadlines a number of times to accommodate his illness and recovery. (*See* Dkt. 29; Dkt. 31; Dkt. 33; Dkt. 36.) Some discovery apparently was also exchanged, and eventually it came to light in 2015 that VBS had changed the box and bottle label for JN–7 Best and informed Nutrivita of the amount of infringing labels and packaging it had originally created. (Dkt. 45–1 ¶ 20–21.) VBS also made changes to the health claims on the labels. (*Id.* ¶ 22.) Satisfied with the changes, Nu-

trivita agreed to dismiss its lawsuit with prejudice.

Roughly two weeks before the dismissal, with its original counsel still ailing, VBS retained another lawyer, William Levin. (Dkt. 45–1 ¶ 12.) Unsatisfied with the subsequent dismissal with prejudice, Mr. Levin filed this motion for attorneys' fees and sanctions, arguing that as a prevailing party, VBS is eligible for a fee award under the Copyright Act and Lanham Act, and that Nutrivita should be sanctioned under Rule 11. The motion alleges that Nutrivita's claims were meritless from the start and that Nutrivita subjected VBS to protracted litigation in order to disadvantage a competitor. Mr. Levin requests approximately $150,000 in attorneys' fees, although he concedes that he has not seen Mr. Friesen's bills, and he does not know how long Mr. Friesen spent working on the case. Accordingly, Mr. Levin declares, the actual amount of fees he would ultimately like to request may be "significantly more or less" than his $150,000 estimate, but that in any event, he considers the estimate to be "a relatively small amount" given the "complex, combined intellectual property law" issues in this case. (Dkt. 41–2 at 10.) He does not submit any bills or invoices, and instead suggests that the Court determine liability for fees first, and then refer the calculation of fees to a magistrate judge or a special master.[2]

Nutrivita, for its part, expresses shock at the estimated amount of requested fees, given the very limited litigation activity in this lawsuit (consisting, in its telling, of "one set of written discovery from each side, two depositions, two motions, and $5,623.76 in costs"). (Pl.'s Opp'n. at 1.) It also complains that Mr. Levin has not submitted bills or invoices, or even a declaration from Mr. Friesen, and points out that the protracted nature of this litigation is mostly attributable to its willingness to stipulate to continuances for Mr. Friesen's sake. Nutrivita adds that it was surprised by the fee motion because it—not VBS—got what it wanted in this lawsuit (a change in VBS's packaging), and that in any event, fees and sanctions are unwarranted.

## III. DISCUSSION

VBS requests attorneys' fees under two statutes—the Lanham Act and the Copyright Act—and argues in addition that the Court should sanction Nutrivita under Federal Rule of Civil Procedure 11. Under the Lanham Act and the Copyright Act, only a prevailing party may recover fees. As a result, the Court will first consider whether VBS is in fact a prevailing party before turning to whether it is actually entitled to fees and whether Nutrivita should be sanctioned under Rule 11.

### A. Prevailing Party Status

■ Attorneys' fees under the Lanham and Copyright Acts are only available to prevailing parties. *See* 17 U.S.C. § 505 ("[T]he court may ... award a reasonable attorney's fee to the prevailing party."); 15 U.S.C. § 1117 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). Here, neither party secured a judgment from the Court, but Nutrivita did stipulate to the dismissal of its claims with prejudice. The parties disagree as to whether a plaintiff's voluntary dismissal with prejudice confers prevailing party status on a defendant.

That question is one of some dispute in the federal courts. The dispute stems from the Supreme Court's decision in *Buckhannon Bd. and Care Home, Inc. v.*

---

**2.** As Nutrivita points out, magistrate judges do not review motions for attorneys' fees in this District. General Order 05–07.

*W.Va. Dept. of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), which interpreted prevailing party provisions in the Americans with Disabilities Act of 1990 and Fair Housing Amendment Act of 1988. In *Buckhannon,* a West Virginia statute required that residents at assisted living facilities be capable of "self-preservation," or in other words, be "capable of moving themselves from situations involving imminent danger, such as fire." *Id.* at 600, 121 S.Ct. 1835. After an assisted living facility failed an inspection because some of its residents did not meet the requirements of the state statute, the facility sued West Virginia, arguing that the state law self-preservation requirement violated the FHAA and ADA. Partway through the litigation, West Virginia repealed the requirement, and the district court dismissed the case as moot. The assisted living facility moved for fees, but the Supreme Court ultimately determined that prevailing party status required a "judicially sanctioned change in the legal relationship of the parties," and that no such change had occurred in the assisted living facility's case, so it was not a prevailing party. *See id.* at 605, 121 S.Ct. 1835 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change.").

■ As the Ninth Circuit has explained, [*Buckhannon*] identified two judicial outcomes under which a party may be considered a 'prevailing party' for the purpose of awarding attorney's fees: (1) an enforceable judgment on the merits; or (2) a settlement agreement enforceable through a court-ordered consent decree. The former provides the necessary foundation for a plaintiff's status as a prevailing party because the plaintiff has received at least some relief based on the merits of the claim. The latter is

acceptable—even without an admission of liability—because it is a court-ordered change in the legal relationship between the parties.

*Perez–Arellano v. Smith,* 279 F.3d 791, 793 (9th Cir.2002) (internal citations omitted). The problem here is that a plaintiff's voluntary dismissal with prejudice does not fall neatly into either of these outcomes: it is not quite an enforceable judgment on the merits, because although a plaintiff is barred from reasserting its claims after a voluntary dismissal with prejudice, the dismissal says nothing about the *merits* of those claims. But neither is it exactly like a court-enforced settlement agreement; although the district court accepts the parties' stipulation and closes the case, and although a future court would no doubt dismiss the claims if brought again, the dismissal itself is not backed up by a consent decree. But although a voluntary dismissal with prejudice does not fall exactly within the bounds of *Buckhannon's* rule, it is clearly *something* more than voluntary conduct which moots a dispute, as in *Buckhannon,* and the mechanism of dismissal *with prejudice* does contemplate judicial enforcement. Buckhannon is therefore a somewhat clumsy fit for voluntary dismissals with prejudice, and district and circuit courts have wrestled with how to apply *Buckhannon's* rule in situations like these.

Happily, however, the Ninth Circuit has resolved the issue with reasonably clear guidance. In *Cadkin v. Loose,* it held in the context of the Copyright Act that a plaintiff's voluntary dismissal *without* prejudice does *not* confer prevailing party status on a defendant. 569 F.3d 1142, 1150 (9th Cir.2009). Because the defendant "remain[s] subject to the risk of refiling," the Ninth Circuit explained, a voluntary dismissal without prejudice "does not alter the legal relationship with the parties." *Id.* at 1149. It then went on to add that "a

defendant *is* a prevailing party following dismissal of a claim if the plaintiff is judicially precluded from refiling the claim against the defendant in federal court." *Id.* at 1150 (emphasis added). That is precisely the circumstance here. By stipulating to a dismissal with prejudice, Nutrivita agreed to never reassert these claims against VBS in federal court. That is a sufficient alteration in the parties' legal relationship to confer prevailing party status on VBS under *Cadkin* and *Buckhannon*.[3] *See Bruce v. Teleflora, LLC,* No. CV13–3279 ODW (CWx), 2014 WL 2710974, at *2 (C.D.Cal. June 16, 2014) (holding that a plaintiff's voluntary dismissal with prejudice conferred prevailing party status on a defendant and citing *Cadkin*).

### B. Fees

#### 1. Discretionary Award under the Copyright Act

■ Under the Copyright Act, "the court in its discretion may allow the recovery of full costs by or against any party . . . . [and] the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Whether to award attorneys' fees to a prevailing party "is reposed in the sound discretion of the district courts." *Fantasy, Inc. v. Fogerty,* 94 F.3d 553, 555 (9th Cir.1996) (*Fogerty II*). Whatever factors the district court considers when determining whether to award fees must be applied evenhandedly to prevailing plaintiffs and prevailing defendants and must further the purposes of the Copyright Act. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 & n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (*Fogerty I*); *see also*

*Mattel, Inc v. MGA Entm't, Inc.,* 705 F.3d 1108, 1111 (9th Cir.2013).

Here, VBS argues that it should recover fees because Nutrivita did not have—and had not even applied for—a copyright that VBS could have possibly infringed. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). Nutrivita does not dispute that it had not applied for a copyright at the time it filed its lawsuit, but argues nonetheless that an application of the *Fogerty* factors should persuade the Court, in its discretion, to deny fees.

■ The Ninth Circuit has invited district courts to consider five factors when determining whether to award fees in copyright cases. Those factors are: (1) "the degree of success obtained on the claim"; (2) "frivolousness"; (3) "motivation"; (4) "objective reasonableness of factual and legal arguments"; and (5) "need for compensation and deterrence." *Maljack Prods., Inc. v. GoodTimes Home Video Corp.,* 81 F.3d 881, 889 (9th Cir.1996). Here, the first factor—degree of success—cuts against an award of fees. True, VBS has prevailed in the sense that Nutrivita has withdrawn its claims and agreed not to reassert them. But that result has only occurred because VBS agreed to change its labeling. The Court at no point ruled that VBS prevailed on the merits of the disputes here, including the copyright dispute. Accordingly, VBS obtained a relatively small degree of success for the purposes of determining a fee award. *See Bridgeport Music, Inc. v. London Music,*

---

3. This result is somewhat counterintuitive because, as Nutrivita points out, it only agreed to dismiss its claims once VBS stopped infringing its trade dress. It is indeed strange that a defendant who makes concessions to a plaintiff in order to have claims dismissed can subsequently be granted prevailing party status. But Nutrivita elected to wind down this lawsuit with a voluntary dismissal with prejudice, and *Cadkin* clearly holds that that procedural mechanism confers prevailing party status on a defendant.

*U.K.*, 345 F.Supp.2d 836, 843 (M.D.Tenn. 2004) ("[A] stipulation of dismissal with prejudice is clearly a much lesser degree of success than a judicial vindication of the defendants' position.")

■ The second and fourth *Fogerty* factors—"frivolousness" and "objective reasonableness of factual and legal arguments"—weigh in favor of a fee award. Nutrivita does not dispute that having not preregistered or registered for a copyright, it was barred from bringing a civil action under § 411. Nutrivita's amended complaint notes that Nutrivita "intends to apply for registration of its copyright," (FAC ¶ 55), but Nutrivita neither alleges that it ever actually applied nor that a mere intention to apply enables it to bring a copyright action. *See Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 621 (9th Cir.2010) ("[R]eceipt by the Copyright Office of a complete application satisfies the registration requirement of § 411(a)."). As a result, from the record before the Court, it appears that Nutrivita's copyright claim was groundless.

■ The final two factors—"motivation" and "need for compensation and deterrence"—weigh against a fee award. There is no evidence in the record of an improper motive on Nutrivita's part, and the Court is not persuaded that Nutrivita alleged its copyright claim in bad faith. Moreover,

the addition of a weak claim to an otherwise meritorious complaint is not the sort of thing that needs to be actively deterred by aggressive fee awards. The parties seem to agree that VBS's product labeling was problematic, and after VBS produced evidence that it had fixed the labeling, Nutrivita agreed to dismiss its claims. There is no reason to infer a malevolent motivation on Nutrivita's part.

Some of the *Fogerty* factors weigh in favor of a fee award, and some weigh against. Having considered the factors and the facts of this case holistically, the Court finds that a fee award is not merited, and exercises its discretion to DENY VBS's request for fees on Nutrivita's copyright claim.

## 2. Exceptional Case Determination under the Lanham Act

■ Nutrivita's next cause of action is for trademark infringement under the Lanham Act, 15 U.S.C. § 1114 *et seq.* The Lanham Act provides that the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In the Ninth Circuit, "[a]n action may be considered exceptional when a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." *Secalt S.A. v. Wuxi Shenxi Constr. Machinery Co., Ltd.*, 668 F.3d 677, 687 (9th Cir.2012).[4] Although the "line distin-

---

**4.** In its reply brief—but not in its motion— VBS argues that the bar for exceptionality in the trademark context was lowered by the Supreme Court's decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, —— U.S. ——, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014). *Octane Fitness* considered the meaning of "exceptional" in the Patent Act's fee provision, which provides—like the Lanham Act does—that a district court may award fees "in exceptional cases." *Id.* at 1753; *see also* 35 U.S.C. § 285. *Octane Fitness* held that "[a]n exceptional case . . . is simply one that stands out from other with respect to the substantive strength of a party's litigation position . . . or the unreasonable manner in which the case

was litigated." *Id.* at 1756. Some district courts have applied *Octane Fitness*'s holding to trademark cases under the Lanham Act. *See, e.g., Apple, Inc. v. Samsung Elecs. Co.*, Case No.:11–CV–01846–LHK, 2014 WL 4145499, at *6 (N.D.Cal. Aug. 20, 2014). And there are good reasons for doing so. *See Octane Fitness*, 134 S.Ct. at 1756 (noting that the Lanham Act's fee-shifting provision is "identical" to that of the Patent Act). Nonetheless, the matter is not settled, and VBS's failure to make this argument in its motion meant that Nutrivita had no meaningful opportunity to respond to it. As a result, the Court will disregard it. *See U.S. v. Alcan Elec. and Engineering, Inc.*, 197 F.3d 1014,

guishing exceptional cases from non-exceptional cases is far from clear" and is "especially fuzzy where the *defendant* prevails due to [a] plaintiff's failure of proof," the Ninth Circuit has held that "an action is exceptional under the Lanham Act if the plaintiff has no reasonable or legal basis to believe in success on the merits." *Id.* (emphasis in original). A district court's determination that a Lanham Act case is exceptional is reviewed *de novo*, but a district court's decision to award fees in an exceptional case is reviewed for abuse of discretion. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir.2003).

■ Here, VBS argues that its trademark—"JN–7 Best"—is so dissimilar from Nutrivita's mark—"Arthro–7"—that Nutrivita could not have possible had any "reasonable or legal basis to believe in success on the merits" of its trademark infringement claim; *see Secalt*, 668 F.3d at 687. To be sure, although the marks do bear a superficial similarity (the "–7" designation), Nutrivita faced an uphill battle in proving its trademark infringement claim. Nonetheless, the Court is not persuaded that Nutrivita lacked *any* reasonable basis to believe that the claim was worthwhile. "In cases where the Ninth Circuit has affirmed the district court's denial of attorneys' fees based on a finding that [a Lanham Act] case was not exceptional, the key factor appears to be that the plaintiff raised 'debatable issues' and had a legitimate reason for bringing the lawsuit." *Am. Optometric Soc., Inc. v. Am. Bd. of Optometry, Inc.*, No. CV10–03983 AHM (FFMx), 2012 WL 6012861, at *2 (C.D.Cal. Dec. 3, 2012) (citing *Applied Info. Sci. Corp. v. eBay, Inc.*, 511 F.3d 966, 973 (9th Cir.2007). Here, whether VBS's

mark is similar enough to Nutrivita's mark to justify a trademark infringement claim is at least debatable. And, importantly, VBS makes no credible argument that Nutrivita brought this claim in bad faith or to harass VBS with needless litigation. On the contrary, the fact that VBS modified its product packaging is good reason to believe that there was something to Nutrivita's lawsuit, even if its trademark infringement claim was not particularly strong. And Nutrivita's willingness to grant continuances, combined with the general lack of activity in this case, strongly suggests that Nutrivita was not in it just to make things difficult for a competitor. *See Applied Info.*, 511 F.3d at 973 (affirming a district court's denial of attorneys' fees where there was "no compelling proof that [the plaintiff] acted capriciously or pursued litigation to harass [the defendant], or that [the plaintiff] intended to bring a meritless or unreasonable case"). Accordingly, the relative strength of Nutrivita's trademark infringement claim is not a ground for an exceptional case determination.

■ VBS offers one more argument for why the Court should determine this case exceptional under the Lanham Act. It argues that Nutrivita's trade dress claim was meritless because Nutrivita did not sue VBS until *after* VBS had changed the offending trade dress. VBS points to the letter it sent to Nutrivita on October 12, 2013, six days before the complaint was filed. (*See* Dkt. 41–3 Exh. 7.) That letter apologizes to Nutrivita for the "confusion" of the similar packaging and notes that it was "not [VBS's] intention" to distribute a confusingly similar product. (*Id.*) The letter says that to "eliminate such confusion,"

1020 (9th Cir.1999) (arguments made for the first time in a reply brief are waived). However, even if the Court were to apply the *Octane Fitness* rule to this case, it would

determine that this case does not "stand out" and therefore that an award of attorneys' fees under the Lanham Act would be unwarranted.

VBS would sell JN–7 Best in bottle form only—i.e., without cardboard packaging—until it could come up with an alternative design. (*Id.*) VBS believes that this letter should have notified Nutrivita that any trade dress infringement ceased before the lawsuit was filed, so even assuming that VBS's old trade dress *did* infringe, Nutrivita's trade dress claims were meritless.

This argument misses the point. Nutrivita believed that the JN–7 Best *bottle* infringed its trade dress, just like the JN–Y Best *box*, so VBS's offer to sell the product in bottle form only did not mean that VBS had ceased all potentially infringing behavior. (*See* FAC ¶ 49 (alleging that VBS was copying Nutrivita's "distinctive packaging"); Pl.'s Opp. at 2–3 (explaining that Nutrivita believed both the JN–7 Best bottle and the box to be trading on its distinctive trade dress).) As a result, Nutrivita's trade dress claim was not meritless when it was filed, and this case is not an exceptional one under the Lanham Act. VBS's request for fees based on an exceptional case determination is DENIED.

### C. Rule 11 Sanctions

Finally, VBS argues that Nutrivita should be sanctioned under Federal Rule of Civil Procedure 11, which requires attorneys to certify that filings are not "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Its theory is basically that Nutrivita went out of its way to harass a competitor by bringing a frivolous lawsuit and then litigating it slowly, over more than two years.

 As an initial matter, the fact that VBS includes a Rule 11 motion in its motion for attorneys' fees is improper. Rule 11 motions "must be made separately from any other motion." Fed.R.Civ.P. 11. However, even if VBS's motion for Rule 11 sanctions were procedurally compliant, the Court would deny it. At bottom, Nutrivita sued VBS because it believed that VBS's packaging was similar to its own and would confuse consumers. VBS made the requested changes. Litigation was protracted, but from the Court's review of the thin record, it appears that the chief reason for the delays was that Nutrivita–the plaintiff, who undoubtedly wanted a resolution of the case–was willing to grant defense counsel multiple continuances on account of his health. Some of Nutrivita's claims were stronger than others, but there is no reason to believe that the lawsuit was frivolous or the filings improper. The Court therefore DENIES VBS's request for Rule 11 sanctions.

### IV. CONCLUSION

For the foregoing reasons, the Court in its discretion declines to award VBS attorneys' fees, and VBS's motion is DENIED.